UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TEMUJIN KENSU,

    Plaintiff,

          v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, ET AL.,

    Defendants.

_____/

Case No. 18-cv-10175

UNITED STATES DISTRICT COURT
JUDGE GERSHWIN A. DRAIN

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [#80]

### I. INTRODUCTION

On January 16, 2018, Plaintiff Temujin Kensu ("Plaintiff") filed the instant action against several Defendants, including Michigan Department of Corrections ("MDOC"); Aramark Correctional Services, LLC ("Aramark"); and Trinity Services Group, Inc. ("Trinity") (together, "Defendants"), on behalf of himself and similarly situated individuals. *See* ECF No. 1. Pursuant to the Court's May 29, 2019 Order on Aramark's and Trinity's Motions to Dismiss, Plaintiff's suit includes claims of violations of 42 U.S.C. § 1983 under the Eighth Amendment for cruel and unusual punishment and inadequate hiring, training supervision, and/or discipline (Counts I and II) against each Defendant, as well as a claim for breach of implied warranty

against Aramark and Trinity (Count VIII). *See* ECF No. 50. The Court dismissed Plaintiff's remaining claims in his Second Amended Complaint. *Id.*

Presently before the Court is Plaintiff's Motion for Class Certification, filed on August 14, 2019. ECF No. 80. MDOC and Aramark each filed a Response on November 4, 2019. ECF Nos. 85, 86. Trinity filed its Response on November 5, 2019. ECF No. 88. Plaintiff timely filed his Reply briefs to each Defendant. ECF Nos. 97, 98, 100. On February 21, 2020, the Court issued an order directing Defendants to file sur-reply briefs addressing Plaintiff's new proposed class definition, which was raised for the first time in his Reply briefs. ECF No. 107. Defendants timely filed their sur-reply briefs. *See* ECF Nos. 109, 110, 111. A hearing on Plaintiff's Motion was held on March 23, 2020. For the reasons that follow, the Court will **DENY** Plaintiff's Motion for Class Certification [#80].

## II. BACKGROUND

### A. Plaintiff Temujin Kensu and the Present Motion for Class Certification

Plaintiff's action involves a dispute concerning the adequacy of prison meals within the MDOC. Plaintiff is the only named plaintiff in the Second Amended Complaint. He is currently incarcerated at the Macomb Correctional Facility in New Haven, Michigan. ECF No. 80, PageID.2882.

Plaintiff now seeks class and subclass certification under Federal Rule of Civil Procedure 23. In his Motion, Plaintiff asserts that he is "presently being denied a

diet adequate to sustain normal health." *Id.* at PageID.2883. He explains that he has filed "numerous grievances" alleging the inadequacy of the prisoner diet. *Id.* Plaintiff argues that he adequately represents a class of individuals who are denied a diet adequate to sustain normal health. *Id.*

Additionally, Plaintiff alleges that he is also a member of a subclass of individuals "who have serious medical needs and require an alternate or 'special' diet that derives from the standard prisoner diet." *Id.* at PageID.2882. Specifically, Plaintiff indicates that he suffers from a "variety of medical conditions which require that he be provided a specialized diet in order to mitigate his serious medical needs." *Id.* Plaintiff testified that he has a "variety of digestive disorders, [a] bowel disease, and [an] immune disease." ECF No. 86-2, PageID.3541. Further, Plaintiff explained that he has a brain tumor, bulging discs in his neck, a "page and a half of spinal disorders," "destroyed knees and ankles," a blood disorder, and an "undifferentiated connective tissue disease." *Id.* at PageID.3544. While Plaintiff has been ordered a "special diet" by his treating physicians since 2014, allegedly for these diagnoses, the MDOC purportedly has denied, and continues to deny, him access to a diet commensurate with his medical needs. ECF No. 80, PageID.2883.

Accordingly, Plaintiff initially moved the Court to certify a class and subclass defined as:

> [A]ll current and former incarcerated persons in prisons under the direction of the MDOC who were provided a diet which was inadequate

to maintain normal health. Plaintiff further seeks certification of a subclass of incarcerated persons under the direct supervision of the MDOC who were not provided a diet commensurate with their medically documented special needs.

*Id.* at PageID.2881–82. Plaintiff asserts that the proposed class and subclass meet the Rule 23(a) and each of the 23(b)(3) requirements. *See generally id.*

Defendants each opposed Plaintiff's Motion. *See* ECF Nos. 85, 86, 88. They argue that Plaintiff cannot satisfy his burden of proof for certification of either his proposed class or subclass. MDOC also argues that the Court should consider an exhaustion issue since it pleaded exhaustion as an affirmative defense. ECF No. 85, PageID.3484. Aramark and Trinity further assert that Plaintiff's remaining claims against them are "individualized monetary claims" for damages subject to the requirements of Rule 23(b)(3) and are thus not suited for certification under Rule 23(b)(1)(A) or Rule 23(b)(2). *See* ECF No. 86, PageID.3515; ECF No. 88, PageID.3662.

Plaintiff then filed his Reply briefs to each Defendant. ECF Nos. 97, 98, 100. In his Reply briefs, Plaintiff concedes that his proposed definition of the class should be altered. *See, e.g.*, ECF No. 99, PageID.4198. To address certain deficiencies raised by Defendants in their Response briefs, Plaintiff refined the class definition as follows: "All inmates incarcerated in MDOC prisons. A further subclass is those MDOC inmates who were not provided medical diets as prescribed by a health care professional." *Id.* Plaintiff argues that this altered definition "does not require a

determination of the merits and is thus, not a fail-safe class." *Id.* Further, Plaintiff contends that this altered definition does not create a new class, but merely "modifies the definition as obviously intended." *Id.* at PageID.4199.

Defendants assert in their sur-reply briefs that Plaintiff's altered class and subclass definitions are also flawed. Specifically, MDOC argues that the new proposed class definition is an improper fail-safe class. ECF No. 109, PageID.4543. Aramark purports that the new proposed class definition is overbroad for two reasons: (1) it includes individuals who never consumed an Aramark provided meal; and (2) it includes individuals whose claims are barred by *res judicata*. ECF No. 110, PageID.4546–47. Further, it argues that the new proposed subclass definition is defective since it lacks objective criteria and requires highly individualized inquiries to determine class membership. *Id.* at PageID.4547. Trinity argues that Plaintiff's altered definition lacks commonality; includes members beyond the applicable statute of limitations and prisoners' claims from before and/or after it contracted with the MDOC; and lacks the required injury in fact for class certification. *See* ECF No. 111.

The Court agrees with Plaintiff that it has "broad discretion to modify class definitions." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (internal citations omitted). A complaint's proposed class definition therefore "does not bind the court, and Rule 23(c)(4) provides [the court] with some

latitude in redefining the class." *Turner v. Grant Cty. Det. Ctr.*, No. 05-148, 2008 U.S. Dist. LEXIS 24210, at *33 (E.D. Ky. Mar. 26, 2008) (internal quotation omitted) (first alteration in original). Thus, the Court will treat Plaintiff's Motion for Class Certification as a motion to certify the amended class definition in his Reply briefs. *See, e.g.*, *Kopaleishvili v. Uzbek Logistics Inc.*, No. 1:17-cv-702, 2019 U.S. Dist. LEXIS 209529, at *7–8 (S.D. Ohio Dec. 5, 2019) (analyzing a narrowed class definition proposed in plaintiff's reply brief for purposes of class certification).

## B. Factual Background of Plaintiff's Action

Between October 2013 and July 2015, MDOC contracted with Aramark to provide food services. ECF No. 50, PageID.1905. Between July 2015 and June 2018, MDOC contracted with Trinity to provide food services.[1] *Id.* In his Second Amended Complaint, Plaintiff asserts that Aramark's and Trinity's "role" is to "provide standardized, prepared meals to prisoners," which MDOC designs. *Id.*

Plaintiff alleges that since 2012, MDOC has deviated from the "common fare" diet and now serves a "standard fare diet" that is "not adequate to sustain normal health." *Id.* at PageID.1907. According to Plaintiff, MDOC removed most of the "common fare" produce from its prison meals in 2012. *Id.* at PageID.1906–07. Plaintiff contends that as a substitute for produce, the standard fare diet now

---

[1] At the hearing on Defendants Aramark and Trinity's Motion to Dismiss, Trinity asserted that it stopped providing food to MDOC in June of 2018.

primarily consists of processed meats, cheese substitutes, white starches, and paste fillers. *Id.* at PageID.1910–11. The prison meals are also purportedly provided in smaller portions than those specified in the menu; are overcooked; or are watered down such that they are devoid of virtually any nutritional value. *Id.* at PageID.1917. Plaintiff asserts that Aramark and Trinity order their kitchen staff to "short" the amounts of food that they serve to far below the stated or required levels. *Id.* at PageID.1945. Plaintiff maintains that the poor diet has led to an increase in various health conditions within the MDOC's prison population, such as diabetes and heart disease. *Id.* at PageID.1907. According to Plaintiff, the standard fare diet is inadequate because it is deficient in calories, nutrients, vitamins, minerals, and does not allows prisoners to self-select meals that comply with their health needs. *Id.* at PageID.1907.

## C. Procedural Background of Plaintiff's Action

On January 16, 2018, Plaintiff filed his initial complaint on behalf of himself and similarly situated individuals against several Defendants, including Aramark, Trinity, MDOC, Corizon, Inc., and the various individuals who have managed these entities. *See* ECF No. 1. The Court dismissed Corizon Inc. as a Defendant on October 10, 2018. ECF No. 42.

Plaintiff filed a Second Amended Complaint on November 2, 2018. ECF No. 50. Aramark and Trinity filed Motions to Dismiss on November 16 and 20, 2018,

respectively. ECF Nos. 52, 53. MDOC did not file a motion to dismiss; it instead filed an answer November 21, 2018. ECF No. 54. On May 29, 2019, the Court granted in part and denied in part Aramark's and Trinity's Motions. ECF No. 76. In its Order, the Court dismissed Counts I, IV, V, VI, and VII of Plaintiff's Second Amended Complaint as to Aramark and Trinity. *Id.* at PageID.2804. Additionally, the Court dismissed the express warranty claim in Count VIII. *Id.* Finally, the Court dismissed Plaintiff's claims that allege wrongful conduct as to Aramark and Trinity occurring prior to January 16, 2015. *Id.*

On April 17, 2019, the Court, pursuant to a stipulation of the parties, bifurcated discovery between class certification and the merits of Plaintiff's claims. ECF No. 70. Plaintiff's deadline for filing a motion for class certification was August 9, 2019. By stipulation of counsel, Plaintiff filed his instant Motion on August 14, 2019. ECF No. 80.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs class certification. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 346 (2011). Before the Court may certify a class action, a plaintiff's proposed class must first satisfy four requirements:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These "four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart*, 564 U.S. at 349 (internal quotation marks omitted). "The trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996).

If each of Rule 23(a)'s perquisites are established, a plaintiff must then show that his class "qualif[ies] under at least one of the three categories set forth in subsection (b)" of the Rule. *In re Nw. Airlines Corp. Antitrust Litig.*, 208 F.R.D. 174, 216 (E.D. Mich. 2002). In this case, Plaintiff argues that his proposed class and subclass satisfy all three subsections of Rule 23(b). Certification under subsection (b)(1) is appropriate if the prosecution of individual actions could result in varying or inconsistent judgments. *See* Fed. R. Civ. P. 23(b)(1). Rule 23(b)(2) permits certification for injunctive and declaratory relief where "the party opposing the class has acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). Certification is appropriate under the third subsection if there are questions of law and fact common to the members that predominate over any questions affecting individual members, provided the class action is the most appropriate vehicle for litigating the claims presented. *See* Fed. R. Civ. P. 23(b)(3).

The Supreme Court has emphasized that "Rule 23 does not set forth a mere pleading standard," and that "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 564 U.S. at 350 (emphasis in original). A trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met; this inquiry may entail "prob[ing] behind the pleadings" and addressing "the merits of the plaintiff's underlying claim." *Id.*

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

MDOC raises substantive concerns regarding the exhaustion of grievances in its Response. ECF No. 85, PageID.3483. It recognizes that it bears the burden of establishing that Plaintiff has not exhausted his remedies through its grievance procedure and that Plaintiff has no duty to plead exhaustion. *Id.* at PageID.3483–84 (citing *Jones v. Bock*, 549 U.S. 199 (2007)). Given that MDOC pleaded exhaustion as an affirmative defense, ECF No. 54, PageID.2528, and argued failure to exhaust in its opposition to Plaintiff's instant Motion, ECF No. 85, PageID.3483; and given Plaintiff's allegations that he complied with the pre-filing exhaustion requirements of the Prison Litigation Reform Act ("PLRA") in his Second Amended Complaint, ECF No. 50, PageID.1952–58, the exhaustion issue relates to the instant Motion.

*See Salem v. Mich. Dep't of Corr.*, No. 13-cv-14567, 2019 WL 4409709, at *3 (E.D. Mich. Sept. 16, 2019). Further, the Court emphasizes its obligation under *Wal–Mart Stores, Inc.* to conduct a "rigorous analysis" of the Rule 23 factors for class certification, and to "probe behind pleadings," which often "entail[s] some overlap with the merits of [P]laintiff's underlying claim[.]" Id. Accordingly, the Court will address the exhaustion issue before analyzing the Rule 23(a) factors for class certification.[2]

Under the PLRA, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law … until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of this provision is to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Further, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court[.]" *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotations and citations omitted).

---

[2] The Court denotes, though, that it does not need to resolve this issue at this juncture. "[T]he emerging trend in the courts appears to be to decide dispositive motions prior to the certification motion …. Most courts agree, and Rule 23(c)(1)(A) reflects, that such precertification rulings on threshold dispositive motions are proper, and one study found a substantial rate of precertification rulings on motions to dismiss or for summary judgment." *Johannes v. Washington*, No. 14-cv-11691, 2015 WL 5634446, at *10 (E.D. Mich. Sept. 25, 2015) (internal quotation omitted). Here, there are no pending dispositive motions for the Court to decide prior to the instant Motion.

Proper exhaustion is mandatory. *See Porter*, 534 U.S. 516, 524 (2002); *Woodford*, 548 U.S. at 85; *Booth v. Churner*, 532 U.S. 731, 739 (2001). A prison's grievance process—not the PLRA—determines when a prisoner has properly exhausted his or her claim. *Jones v. Bock*, 549 U.S. 199, 219 (2007) ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

Pursuant to Policy Directive 03.02.130, dated July 9, 2007, MDOC provides prisoners with a grievance procedure for bringing their concerns and complaints forward. ECF No. 86, PageID.3485. First, the grievant must attempt to resolve the issue with the staff member involved "within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division …." *Id.* (quoting MDOC Policy Directive 03.02.130(P)). If the issue is not resolved within five business days, the grievant must then file a Step I grievance using the appropriate form. *Id.* (quoting MDOC Policy Directive 03.02.130(v)). The grievant must include "[d]ates, times, places, and names of all those involved in the issue[.]" *Id.* (quoting MDOC Policy Directive 03.02.130(R)).

If the grievance is accepted, the prison staff is required to respond in writing within fifteen days, unless an extension is granted. *Id.* If the grievant is dissatisfied

with the disposition of the grievance, or does not receive a response, she or he must file a Step II grievance using the appropriate form within ten business days. *Id.* at PageID.3485–86 (citing MDOC Policy Directive 03.02.130(BB)). If a grievant is dissatisfied with the response at Step II, or does not receive a response within fifteen days, she or he has ten business days to submit a Step III appeal grievance to the Prisoner Affairs Section. *Id.* at PageID.3486 (citing MDOC Policy Directive 03.02.130(FF)). The matter is fully exhausted after the disposition of the Step III grievance. *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

The Court does not dispute Plaintiff's assertion in his Reply and his argument at the hearing that the MDOC Policy Directive prohibits grievances affecting multiple prisoners. ECF No. 99, PageID.4199. Rather, it takes issue with Plaintiff's seeming failure to provide the Court with evidence of one properly and timely exhausted grievance. It is unclear from Plaintiff's Second Amended Complaint and attached exhibits to Plaintiff's instant Motion, ECF Nos. 80-7, 80-8, whether Plaintiff, the only named representative in the amended proposed class and subclass, fully exhausted his claims pursuant to MDOC's Policy Directive.

In his Second Amended Complaint, Plaintiff lists 28 filed grievances concerning the prison diet. ECF No. 50, PageID.1952–1958. Plaintiff asserts that

he met the exhaustion requirements of the PLRA and can thus proceed with his lawsuit. *Id.* at PageID.1959. The Court agrees with MDOC that Plaintiff fails to specify who was grieved in each of these grievances. ECF No. 85, PageID.3487. The Sixth Circuit has held that a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective administrative grievance. *See Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Courts within this District have emphasized a prisoner's grievance is properly exhausted against those prison officials specifically named in a complaint pursuant to MDOC's Policy Directive. *See, e.g.*, *Pasley v. Maderi*, No. 13-13251, 2014 WL 5386914, at *4 (E.D. Mich. Sept. 15, 2014).

Plaintiff contends that he was not required to name all prison officials in his grievances to bring the instant lawsuit. ECF No. 99, PageID.4201. He correctly cites to other courts within this District which have determined that a plaintiff has properly exhausted the required administrative remedies even where she or he "may not have specifically named all of the defendants or described all of the specific claims in the initial grievance[.] *See Maye v. Klee*, No. X, 2018 U.S. Dist. LEXIS 44618, at *20–21 (E.D. Mich. Jan. 24, 2018). The Court denotes here, though, that Plaintiff has failed to name one MDOC official in any of the provided grievances.

MDOC also argues that Plaintiff fails to identify a grievance that was filed close in time to the putative class period in the instant matter, which the Court determined is January 16, 2015. ECF No. 85, PageID.3488. The 28 grievances in

Plaintiff's Second Amended Complaint were filed between 2009 and 2012. ECF No. 50, PageID.1952–1958. Additionally, Plaintiff's only logged grievance in his attached exhibits to his instant Motion, ECF No. 80-7, PageID.3256, was filed January 13, 2015—three days prior to the commencement of the putative class period. While the exhibits demonstrate other logged grievances filed after January 16, 2015, these grievances were not filed under Plaintiff's name. The Court denotes that Plaintiff does not address this timeliness argument in his Reply brief nor did he address it at the hearing.

Plaintiff is correct to note in his Reply brief to MDOC that he is not required to plead exhaustion. ECF 99, PageID.4199–4200. Since a failure to exhaust administrative remedies is an affirmative defense—which MDOC employed in its Answer—defendants bear the burden of proof on exhaustion. *Surles*, 678 F.3d at 456. However, as explained above, the Court is concerned whether Plaintiff fully exhausted his grievances in the instant case. The Court is therefore faced with the "unappealing prospect of certifying a class only to have [the only] named Plaintiff[] later dismissed from the suit based on a failure to exhaust [his] claims." *Johannes v. Washington*, No. 14-cv-11691, 2015 WL 5634446, at *9–10 (E.D. Mich. Sept. 25, 2015) (declining to certify a class before addressing the threshold issue of exhaustion because defendants raised "non-trivial concerns about exhaustion" and "[o]therwise the Court risks certifying a class only to later find that the claims of all six of the

class representatives must be dismissed, and, therefore, their claims are atypical and they are inadequate class representatives."); *see also Salem v. Mich. Dep't of Corr.*, No. 13-14567, 2016 WL 7409953 (E.D. Mich. Dec. 22, 2016) (declining to certify a class based on the court's "legitimate concerns" of the exhaustion issue, which led the court to conclude that plaintiffs did not satisfy the Rule 23(a) requirements).

The Court does not yet opine on whether MDOC can carry its "considerable summary-judgment burden of showing non-exhaustion." *Johannes*, 2015 WL 5634446, at *9 (quoting *Surles*, 678 F.3d at 455–56). The Court does take notice that the provided logs of prisoner grievances in the attached exhibits are insufficient for it to decide whether the grievances contain allegations related to Plaintiff's remaining claims at this juncture. Accordingly, the Court denotes MDOC's non-trivial concerns about exhaustion before conducting its analysis of the amended class and subclass for certification.

## B. Rule 23(a)

### 1. Ascertainability

Before the Court may certify a class pursuant to Rule 23, "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012). Courts within the District have determined that this inquiry is an "implied prerequisite" of Rule 23.

*See, e.g.*, *In re OnStar Contract Litig.*, 278 F.R.D. 352, 373 (E.D. Mich. 2011) (internal quotation omitted). "[A] class definition should be based on objective criteria so that class members may be identified without individualized fact finding." *Id.* The purpose of this requirement is to ensure administrative feasibility, including the ability to notify absent class members in order to provide them an opportunity to opt out and avoid the potential collateral estoppel effects of a final judgment. *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016). Common class certification issues include "evaluating proposed classes that are ill-defined or too broad." *McGee v. E. Ohio Gas Co.*, 200 F.R.D. 382, 388 (E.D. Mich. 2001).

Plaintiff conceded in his Reply briefs and at the hearing that his initial class and subclass definitions should be altered. *See, e.g.*, ECF No. 99, PageID.4198. To reiterate, Plaintiff refined the class definition as follows: "All inmates incarcerated in MDOC prisons. A further subclass is those MDOC inmates who were not provided medical diets as prescribed by a health care professional." *Id.*

### a. Plaintiff's Proposed Class

Beginning with the proposed amended class, the Court is concerned that the definition is too general and overbroad. "A class definition is [] too general where it requires the Court to determine whether an individual's constitutional rights have been violated in order to ascertain membership in the class itself." *Schilling v. Kenton Cty., et al.*, No. 10-143-DLB, 2011 U.S. Dist. LEXIS 8050, at *15–16 (E.D.

Ky. Jan. 27, 2011) (internal citation omitted). Here, Plaintiff fails to include the alleged violation within his amended definition from his Amended Complaint. *Cf. McBride v. Mich. Dep't of Corr.*, No. 15-11222, 2017 U.S. Dist. LEXIS 113144, at *12 (E.D. Mich. June 30, 2017) (finding that plaintiff's proposed class—MDOC inmates *with hearing impairments requiring an accommodation* was based on sufficiently objective criteria) (emphasis added). Rather, Plaintiff here seeks to include "all inmates incarcerated in MDOC prisons." *See, e.g.*, ECF No. 99, PageID.4198.

Courts within the District, though, have determined that a class is sufficiently finite and identifiable to qualify for certification if a plaintiff proposes to include all current or future inmates in a proposed definition. For example, in *Glover v. Johnson*, the district court determined that plaintiffs' proposed class of "all female penal inmates who are now, or may be in the future, incarcerated at the Huron Valley Women's Facility and at the Kalamazoo County Jail" qualified for certification under Rule 23. 85 F.R.D. 1, 5 (E.D. Mich. 1977). The district court rejected defendants' objection that plaintiffs' proposed class was "fatally indefinite." *Id.* at 4. It reasoned that the "fact that membership of the class may change over time in no way qualifies or undermines the identity of the class for purposes of Rule 23." *Id.* Further, the district court cited to other courts which certified similar proposed class definitions, including a § 1983 class action brought on behalf of "all present

and future inmates of the Stateville Correctional Center," alleging guard brutality and other abuses.  *Id.* (citing *Curtis v. Voss*, 73 F.R.D. 580, 582–83 (N.D. Ill. 1976)).

The Court finds that amended class definition negates Defendants' arguments in their Response briefs, and MDOC's argument in its sur-reply brief, that Plaintiff's proposed class definition constitutes an improper fail-safe class.  For example, Aramark argued that Plaintiff's initial definition was "fraught with uncertainty" and gave "the Court no objective criteria as guidance" for identifying individuals within the Class.  ECF No. 86, PageID.3528.  Trinity similarly disputed Plaintiff's initial definition, explaining that it required the Court "to have known and determined which prisoners had 'normal health' prior to entering prison."  ECF No. 88, PageID.3648.  Further, the Court would then have to "know which prisoners' health became 'abnormal' while in prison" and then ultimately decide "which prisoners' health became abnormal *because of* an 'inadequate diet.'"  *Id.* (emphasis in original). Without the language "who were provided a diet which was inadequate to maintain normal health," class members are ascertainable without individualized fact finding relative to each prisoners' health status before and during incarceration in the MDOC.[3]

---

[3] The Court takes notice of Trinity's rebuttal expert Barbara Wakeen's opinion that "any claimed harm from claimed nutritional deficiencies in the diet would be highly individualized based on one's health status before and during incarceration."  ECF No. 88-2, PageID.3686.

The Sixth Circuit has explained that a "fail-safe" class is one that "cannot be defined until the case is resolved on its merits." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (internal citation omitted). "Such a class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment." *Id.* Stated differently, "[e]ither the class members win, or by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *Randleman v. Fidelity Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011); *see also Schilling*, 2011 U.S. Dist. LEXIS 8050, at *15–16 ("The class definition should avoid subjective standards such as the plaintiff's state of mind or terms that depend on a merits adjudication. A class definition is therefore too general where it requires the Court to determine whether an individual's constitutional rights have been violated in order to ascertain membership in the class itself.").

Here, Plaintiff proposes an amended definition that includes all inmates incarcerated in MDOC prisons. Unlike a fail-safe class, this definition does not depend upon a merits adjudication or include any subjective standards. Rather, Plaintiff's amended class can be determined based on objective criteria such as MDOC's food service contracts with Aramark and Trinity. *See* ECF Nos. 50-1, 50-2. These contracts assert the approximate number of prisoners MDOC feeds each day—43,500—as well as provide "region and facility-specific information" of all

MDOC facilities, which include information about the total capacity of prisoners at each facility. *See* ECF No. 50-1, PageID.1998–2003; ECF No. 50-2, PageID.2313–19. Additionally, the amended class can be determined based on the provided logs of MDOC prisoners' grievances.[4] *See* ECF No. 80-8; *see also Salem v. Mich. Dep't of Corr.*, No. 13-14567, 2016 WL 7409953, at *6 (E.D. Mich. Dec. 22, 2016) (finding that plaintiff's third proposed class definition can be determined based on objective criteria such as exhausted grievances).

While the Court recognizes Trinity's concern that Plaintiff's proposed class has "non-exacting parameters," including an "innumerable number of people," the Court denotes that Plaintiff provided approximate numbers for his proposed class in his Motion and confirmed this estimate at the hearing. Accordingly, the Court finds that it would not need to make individual inquiries to determine whether a particular individual was incarcerated in MDOC prisons, and thus a member of Plaintiff's amended class.

The Court is mindful that Rule 23(c)(4) empowers courts to define an appropriate class, whether by accepting the proposed class, limiting the class to certain issues, or creating subclasses. Thus, the Court can amend Plaintiff's proposed definition to reflect these specific time periods as to each Defendant. *See*

---

[4] The Court's uncertainty with the grievance logs for the unanswered exhaustion issue, as discussed in the previous section, does not affect the Court's ability to use these logs as an additional criterion for this threshold issue of ascertainability.

*also Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (internal citations omitted). The Court finds this necessary, especially in light of Dr. Catherine Adams Hutt's testimony that "the time period is a long time period." ECF No. 89-2, PageID.3917. Dr. Hutt was unable to provide any specificity for Plaintiff's proposed class beyond asserting that the period spans "decades." *Id.*

Pursuant to the Court's May 29, 2019 Order, Plaintiff's claims in the instant action are limited to Defendants' alleged wrongful conduct occurring after January 16, 2015. ECF No. 76, PageID.2804. Plaintiff's claims against Aramark are specifically limited to a period between January 16, 2015 to July 13, 2015, when Aramark concluded its contract with MDOC. ECF No. 86, PageID.3511. Plaintiff's claims against Trinity are limited to a period between July 14, 2015 and June 2018 to reflect Trinity's contract period with MDOC. ECF No. 50-2. At the hearing, Plaintiff agreed with these time periods and added that the claims against MDOC span the entire time period of the instant case.

### b. Plaintiff's Proposed Subclass

In addition to the aforementioned class, Plaintiff seeks to certify a subclass: "those MDOC inmates who were not provided medical diets as prescribed by a health care professional." ECF No. 99, PageID.4198. The Court finds that the proposed amended subclass is also ascertainable by reference to objective criteria.

Here, each of the following factors can be determined by objective criteria: MDOC inmates; those inmates who were prescribed medical diets from a health care professional; and those inmates who were not provided the prescribed diet. The Court dismisses Aramark's argument in its sur-reply brief that this information cannot be readily determined. ECF No. 110, PageID.4548. While it agrees with Aramark that Plaintiff has not proposed an administratively feasible method for determining whether individuals were "not provided medical diets as prescribed by a health care professional," the Court does not find that this should be preclusive for Plaintiff to satisfy the threshold inquiry. Plaintiff asserted in his Reply briefs that information regarding the subclass members who were prescribed special meals, as well as information concerning whether the subclass members received those meals, is "readily determinable." *See, e.g.*, ECF No. 97, PageID.4186. At the hearing, Plaintiff explained that the information is available and can be obtained through discovery of the merits in the instant case. Plaintiff asserted that it is "clear who got a special diet and who didn't."

The Court denotes that Plaintiff's amended subclass definition cures the initial definition's deficiencies. Specifically, the Court no longer needs to determine what constitutes "special needs," as it is no longer included in the amended definition. *See* ECF No. 86, PageID.3528 (arguing that Plaintiff's proposed subclass includes phrases "fraught with uncertainty and give the Court no objective criteria as

guidance for identifying" members of the subclass); *see also* ECF No. 88, PageID.3649–50. It will ultimately be each class member's burden to show that she or he falls within the subclass definition. *See Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 531 (E.D. Mich. 2015).

Similar to the amended class definition, the subclass must be further defined to include specific time periods as to each Defendant. The aforementioned time periods for the amended class, as applied to each Defendant, will also apply to the amended subclass. These additions avoid the proposed subclass encompassing an infinite time period and thus satisfy the Court's previous Order limiting Plaintiff's remaining claims against Defendants.

In sum, the Court finds that Plaintiff's amended class and subclass definition, as further defined by the Court with applicable time periods, is ascertainable and can be determined based on objective criteria. Despite having an ascertainable class and subclass, though, the Court finds that Plaintiff's Motion for Class Certification must be denied for the analysis provided below.

### 2. Rule 23(a)(1) – Numerosity

Pursuant to Rule 23(a)(1), the numerosity requirement is satisfied when "the class is so numerous that joinder of all members [of the class] is impracticable." Fed. R. Civ. P. 23(a)(1). A "substantial" number of affected individuals is enough to satisfy this requirement. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th

Cir. 2012). There is no exact number that must be met for a class to be certified. *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 406 (E.D. Mich. 2012). Courts within this District and other courts generally consider a variety of factors when determining numerosity, including the type of action; the size of the individual claims; the location of the members; and the ability to easily ascertain identities of proposed class members. *See Calloway, Ltd.*, 287 F.R.D. at 406; *see also* 7a The Late Charles Alan Wright et al., *Federal Practice and Procedure* § 1762 (3d ed. 2017).

In his initial Motion, Plaintiff represented that there were over 40,000 potential class members and approximately 1,200 potential subclass members. ECF No. 80, PageID.2882. At the hearing, Plaintiff confirmed that these approximate sizes do not change for his proposed amended definition in his Reply briefs. While a plaintiff need not know an exact figure to meet the numerosity requirement, a plaintiff must "demonstrate that the number of potential class members is large." *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 601 (E.D. Mich. 1985).

Here, Dr. Hutt, who Plaintiff relies on to support his Motion, is unable to quantify or define the number of individuals who may fall into the proposed class:

> Q [Mr. Bradford Boyer, attorney for Trinity]: You don't know
> how many people that is. Right?
> A [Dr. Hutt]: I believe it's all of them.
> Q: How many is, "all of them?"
> A: I don't have knowledge –

ECF No. 89-2, PageID.3924. Dr. Hutt went on to assert the potential class members "would be the number of prisoners who have been consuming this diet." *Id.* Indeed, it is unclear exactly how many of the potential members will fall within the amended class and subclass definitions address above. However, in order to err on the side of caution, the Court finds that Plaintiff's approximate number of prisoners listed in his Motion for both the class and subclass is sufficient to satisfy the numerosity requirement of Rule 23(a).

### 3. Rule 23(a)(2) – Commonality

Class certification is appropriate only when there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In order to demonstrate commonality under Rule 23(a)(2), the plaintiff must identify a "common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[T]here need only be one question common to the class – though that question must be a 'common issue the resolution of which will advance the litigation.'" *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003) (internal citation omitted). The Supreme Court has clarified that it is not enough that a class raises common questions—even in "droves." *Wal-Mart*, 564 U.S. at 350 (internal citation omitted). Rather, what matters to class certification is whether a class action would "generate common

*answers* apt to drive the resolution of the litigation." *Id.* (internal citation omitted) (emphasis in original); *see also Dearduff v. Washington*, 330 F.R.D. 452, 464 (E.D. Mich. 2019).

The crux of this case is commonality. Plaintiff argues that the claims of each class and subclass member can satisfy the commonality requirement. In his Motion, Plaintiff explains that the class and subclass members seek to remedy Defendants' "systemic failure to provide Plaintiff a diet adequate to sustain normal health in violation of the Eighth Amendment." ECF No. 80, PageID.2896. At the hearing, he concluded by asserting that this constitutional inquiry can be answered and resolved on a class-wide basis. He emphasized that because the standard fare diet is designed for the "average prisoner," its deficiencies can be resolved on an "average basis."

Under the Eighth Amendment, punishment imposed on prisoners may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment protects a prisoner's right to receive food with sufficient nutrition that is adequate to maintain normal health. *Cunningham v. Jones*, 567 F.2d 653, 659–60 (6th Cir. 1977). "If the prisoner's diet, as modified, is sufficient to sustain the prisoner in good health, no constitutional right has been violated." *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002).

Further, the Eighth Amendment imposes affirmative duties on prison officials to, among other things, "ensure that inmates receive adequate food." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official's conduct must reflect an "unnecessary and wonton infliction of pain." *Rhodes v. Chapman*, 452 U.S. at 346; *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice." *Wright v. Taylor*, 79 F. App'x 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835–36). The Supreme Court has held that a prison official violates the Eighth Amendment when two requirements are met. *See Farmer*, 511 U.S. at 834. First, the alleged deprivation must be, objectively, "sufficiently serious." *Id.* (internal citation and quotation omitted). Second, a prison official must have a "sufficiently culpable state of mind." *Id.* (internal citation and quotation omitted).

Here, Plaintiff asserts that the claims of each class member depend upon common answers to common factual questions, including:

- Have Defendants failed to design or provide a standardized diet that provides adequate nutrition to sustain normal health?
- Have Defendants failed to design or provide specialty diets that provide prisoners with serious medical needs a diet or nutrition that is commensurate with their serious medical needs?
- Have Defendants failed to provide adequate portion sizes, or shorted meals provided to prisoners?
- Have Defendants failed to provide sufficient training related to a diet that is adequate to sustain normal health for prisoners housed in the MDOC?

ECF No. 80, PageID.2896. Further, he argues that "[a]ny factual differences that may exist among class members with respect to their individual medical needs cannot defeat this dominating commonality." *Id.* (citing *Reese v. CNH America, LLC*, 227 F.R.D. 483, 487–88 (6th Cir. 2005)). However, Plaintiff fails to make any citations to the record in his Motion or Reply briefs to support his argument that numerous common questions of law and fact exist as to all members of the proposed class and subclass. He instead cites to courts outside of this District which have determined that allegations of system-wide failures by prisons can establish commonality for classes of affected prisoners. *Id.* at PageID.2896–97.

At the hearing, Plaintiff suggested that *McBride v. Mich. Dep't of Corr.*, No. 15-11222, 2017 WL 3097806 (E.D. Mich. June 30, 2017), is analogous and persuasive to his instant action. In *McBride*, the district court adopted the magistrate judge's report and recommendation to certify a class comprised of "all deaf and hard of hearing individuals in the custody of MDOC (whether now or in the future), who require hearing-related accommodations, including but not limited to interpreters, hearing devices, or other auxiliary aids or services, to communicate effectively and/or to access or participate in programs, services, or activities available to individuals in the custody of MDOC." *Id.* at *1. The magistrate judge determined that each of the proposed class members alleged that they were similarly affected by a policy of the MDOC. *Id.* at *7. Accordingly, the commonality requirement was

satisfied. For the reasons that follow, the Court finds that individualized inquiries and potential variances of the degrees of harm from the standard fare diet in the instant case prevent a similar finding of commonality.

Defendants contend that Plaintiff fails to demonstrate how any of his claims are resolvable in "one stroke." They therefore argue that his proposed class and subclass lack meaningful commonality under Rule 23(a). *See, e.g.*, ECF No. 86, PageID.3516. In its sur-reply brief, Trinity cites to a recent case in this District, *Dearduff v. Washington*, 330 F.R.D. 452 (E.D. Mich. 2019), as persuasive authority for this Court to deny certification in this action. ECF No. 111, PageID.4556. In *Dearduff*, the district court determined that two proposed classes did not satisfy *Wal-Mart*'s one-stroke requirement.[5] 330 F.R.D. at 466. There, the prisoners brought a proposed class action claiming that their dental needs were not being met in violation of the Eighth Amendment. *Id.* at 456. In examining plaintiffs' proposed classes, the district court looked for evidence that the policy or practice challenged by the class exposed "nearly every member—no matter their dental health—to similar risk of harm." *Id.* "[W]ithout sufficient reason to believe that almost every member of a

---

[5] The first proposed class was "all prisoners who have less than two years of continuous incarceration with the MDOC," which consisted of approximately 19,000 individuals. *Dearduff*, 330 F.R.D. at 466. Another proposed class was "all prisoners waiting for their routine dental appointment," which consisted of approximately 3,000 individuals. *Id.* at 468.

proposed class [], is at a similar risk of harm the door to individualized inquiry would be left ajar." *Id.*

The Court agrees with Trinity that the *Dearduff* court's findings of a lack of commonality is analogous and persuasive to Plaintiff's instant action. It finds that an attempt to certify either the proposed class or subclass would have to establish that the health diversity of all 40,000 prisoners, or 1,200 prisoners for the subclass, is not so great that all prisoners are at a "similar risk of a similar degree of harm" in consuming the standard fare diet. *Dearduff*, 330 F.R.D. at 467. Further, this Court determines that the same proof cannot be used to determine the sufficiency of any particular prisoners' diet, or whether any of the prisoners' health, has been adversely affected from the standard fare diet in violation of the Eighth Amendment. Rather, the nature of the injuries allegedly suffered by each prisoner in the class and subclass, relative to the purported deficiencies in the standard fare diet, would require individualized inquiries.

### a. Plaintiff's Proposed Class

Plaintiff's proposed class encompasses approximately 40,000 prisoners in the MDOC. ECF No. 80, PageID.2882. The diversity in a group that size—including a prisoner's duration of exposure to the meals; gender; weight and other physical characteristics; and variety of consumed meals—is presumably great. *See Dearduff*, 330 F.R.D. at 456. Given the breadth of this proposed class and the nature of

Plaintiff's class claim, the Court finds that it is difficult to address the Eighth Amendment claims of all 40,000 prisoners in "one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

It is useful to examine how the issues underlying an Eighth Amendment claim might differ. *See Dearduff*, 330 F.R.D. at 464. For example, the prisoners' Eighth Amendment claims vary in their amount of risk. *See id.* The Court acknowledges Dr. Hutt's opinion that the diets served to the prisoners was "inadequate to support health for the long-term." ECF No. 80-6, PageID.3219. She asserts that the diet affects "virtually all prisoners in the MDOC system." *Id.* at PageID.3220. However, the Court takes notice of Dr. Hutt's acknowledgment that the consumption of the standard fare diet, as well as any impacts resulting from it, could not be generally identified. Rather, such an inquiry would be individualized to each prisoner.

Specifically, Dr. Hutt testified that it is "very difficult" to determine how many meals it would take for a prisoner in the MDOC to be adversely affected by the standard fare diet. ECF No. 88-3, PageID.3705. She explained, "it's difficult to understand how each individual would respond to dietary intake." *Id.* Dr. Hutt also confirmed that "the duration of the exposure to the meals, the person's gender, physical makeup, et cetera, would affect whether or not [the prisoners] may be adversely impacted by this diet[.]" *Id.* at PageID.3706. It is not clear from Dr. Hutt's testimony that she believes that nearly all of the 40,000 prisoners subject to the

standard fare diet are at a substantial risk of serious harm. *See Dearduff*, 330 F.R.D. at 467 (emphasizing that plaintiffs' expert was unable to opine that nearly all of the 19,000 prisoners subject to the two-year rule are at a "substantial risk of serious harm" from the lack of routine dental care).

Trinity's expert dietician Barbara Wakeen also opined to the individualized inquiries at issue in Plaintiff's claims. She argues in her rebuttal report that Dr. Hutt made "generalizations" and predicated her opinions on the "comparison of the MDOC prison population to general populations nationwide without any substantiating documentation." ECF No. 88-3, PageID.3686. Ms. Wakeen asserted that "any claimed harm from claimed nutritional deficiencies in the diet would be highly individualized based on one's health status before and during incarceration." *Id.* She also explained that "forecasting potential health impacts, positive or negative, based upon nutritional content involves analyses of individualized health information and physical factors." *Id.*

Further, the Court denotes that Dr. Hutt admitted that she did not review any evidence—other than Plaintiff's Complaint and "an understanding of the population demographics in the State of Michigan"—in formulating her opinions. *See* ECF No. 88-3, PageID.3698. Trinity and Aramark emphasize Dr. Hutt's lacking review of any of the MDOC prisoners' medical records. *See* ECF No. 86, PageID.3518; ECF

No 88. PageID.3655–56; ECF No. 111, PageID.4558. For example, the Court takes notice of the following exchange:

> Q (Mr. Moyer, counsel for Trinity): Did you ask for any information or documents corroborating or confirming any of the allegations in the Complaint that you relied upon?
> A (Dr. Hutt): No, I did not.
>
> * * *
>
> Q: You haven't reviewed any medical records or medical information relating to the health or medical conditions of any other prisoners in the Michigan prisons --
> A: No.
> Q: --beyond Mr. Kensu?
> A: No.
> Q: Okay. So you have no medical information for any other prisoner that currently or previously resided at the Michigan correctional facilities?
> A: That's correct.

ECF No. 88-3, PageID.3697–98. Dr. Hutt also confirmed that she did not have any information pertaining to the prisons themselves. *Id.* at PageID.3698. At the hearing, Aramark emphasized the diversity in the prison facilities, noting that there are 29 facilities; 2 short-term prions; and 1 female facility. The Court, similar to the district court in *Dearduff*, finds that Dr. Hutt's lacking review of evidence does not give it sufficient reason to believe that almost every member of the proposed class is at a similar risk of harm. *Dearduff*, 330 F.R.D. at 466.

In its Response, Trinity alleges that several questions must be answered in order to determine the class of individuals who have been impacted by the standard fare diet, including "(1) the number of meals eaten per day, (2) the duration of that

consumption over what period of time, (3) their physical attributes, such as sex, weight, height, physical activity, metabolism, etc., (4) their preexisting health issues, and (5) changes to their health or the development of new medical conditions or injuries[.]" ECF No. 88, PageID.3565. The district court in *Dearduff* addressed a similar concern, explaining that "there might be less than a 1% chance that Prisoner A will experience serious harm but a 20% chance that Prisoner B will experience serious harm. Perhaps the former is not 'substantial' in the Eighth Amendment sense but the latter is." *Dearduff*, 330 F.R.D. at 464. The Court is inclined to adopt this same reasoning here, especially where there is little evidence to counter the potential differences in the amount of risk amongst the approximately 40,000 class members.

The Court also recognizes that the variety of diets available in the MDOC facilities can impact the commonality inquiry for Plaintiff's proposed class of 40,000 prisoners. For example, Aramark asserts in its Response that it offered a "wide array of food services" at the MDOC facilities. ECF No. 86, PageID.3506. Specifically, Aramark served the standard fare diet[6]—a rotating 14-day cycle menu which also includes an alternative menu choice—as well as seven "therapeutic diets" to prisoners with medical disorders. *Id.* at PageID.3507–08. Further, prisoners had the option to self-select twelve other diets, even if they did not have a medical order. *Id.*

---

[6] Aramark refers to this diet as the Statewide Standard Menu "SWSM" in its briefs.

at PageID.3708.  Aramark also provided options for religious diets, as well as "special event" meals for six holidays of the year.  *Id.*

Dr. Hutt testified that she did not review or consider the nutritional content of any of the specialty diets or the alternate menus.  ECF No. 88-3, PageID.3695.  She also admitted that she did not review any other underlying grievances which discussed the adequacy of the meals besides Plaintiff's formal grievances.  *Id.*  Given the vast variety of meals offered at the MDOC prisons, as well as Plaintiff's admission that "[e]very facility is different" (ECF 80-2, PageID.2944), the Court determines that there is not sufficient evidence regarding the nutritional adequacy of this wide variety of offered meals.  The Court finds such an inquiry necessary given Plaintiff's argument that the "central issue of this case" is whether "Defendants provided a diet adequate to sustain normal health[.]"  ECF No. 99, PageID.4197.

Finally, the Court finds that the prisoners' choice to not consume a diet or meal makes it difficult to address the Eighth Amendment claims of all 40,000 prisoners in "one stroke."  *Wal-Mart*, 564 U.S. at 350.  Dr. Hutt testified to the impact a prisoners' consumption choice has on their nutrition:

> Q (Ms. Stowers, counsel for Aramark): So if an inmate was, for example, throwing away portions of food that they didn't want to eat, that would impact the health?
> A (Dr. Hutt): Yes, I think so.  I believe so.
> Q: If an inmate was trading because he wanted two of something and didn't want to eat something else, that would also impact the nutritional value?
> A: Yes, it could.

ECF No. 88-3, PageID.3746–47. Plaintiff also admitted that he witnessed other prisoners discarding their meals or selling their food to other prisoners. ECF No. 80, PageID.2966–67. Dr. Hutt's and Plaintiff's testimony demonstrate that each prisoners' choices should be considered individually, which further precludes findings of commonality for the proposed class.

Accordingly, the aforementioned individualized inquiries and potential variances of the degrees of harm from the standard fare diet prevent the Court from determining that Plaintiff's proposed class of approximately 40,000 prisoners satisfies the commonality requirement under Rule 23(a)(2).

### b. Plaintiff's Proposed Subclass

The Court's analysis of Plaintiff's proposed class also applies to Plaintiff's proposed subclass, which encompasses approximately 1,200 prisoners in the MDOC who allegedly did not receive medically prescribed diets. ECF No. 80, PageID.2882. While 1,200 is significantly less than 40,000, the Court does not find that there is sufficient evidence to demonstrate commonality under Rule 23(a)(2).

Plaintiff argues that "[e]ach subclass member did not receive a diet as prescribed to them." ECF No. 99, PageID.4203. In addition to his listed "common factual questions," which are provided in the previous section, Plaintiff asserts in his Motion that he alleged "specific and overarching deficiencies in diet" that expose the subclass to "violations of their rights on the basis of deliberate indifference to

their serious medical needs." ECF No. 80, PageID.2896. However, Plaintiff fails to cite to any specific evidence to further support his allegations.

In order to resolve the legal issue in this action, whether the 1,200 prisoners who were prescribed a special diet did not receive such a diet, the Court must delve into the specific facts of each prisoner's incarceration and the special diet relative to that prisoner. These highly individualized factual inquires will predominate at trial, and thus, override the appropriateness of the class action. *See Schilling v. Kenton Cty., et al.*, No. 10-143-DLB, 2011 U.S. Dist. LEXIS 8050, at *26 (E.D. Ky. Jan. 27, 2011). The different circumstances relative to each prisoner, which may dictate different outcomes and different damages, mitigates against use of the class action to resolve the claims before this Court.

Indeed, Dr. Hutt testified to these different circumstances. She explained that a specialty diet in the MDOC "depends on the [prisoner's] individual condition," such as whether a prisoner has a gluten sensitivity; whether a prisoner is diabetic; or whether a prisoner has a predisposition to a heart disease. ECF No. 88-3, PageID.3714. Further, she asserted that such a diet is "designed for an *individual who has a certain condition*[.]" *Id.* (emphasis added). Patricia Willard, a MDOC dietician, also confirmed that specialized diets are dealt with on an "*individual prisoner by prisoner basis*[.]" ECF No. 80-3, PageID.3014. While she did explain that all people who need a specialty diet for their particular needs are "basically all

treated the same way in terms of the design of their diet," the Court does not find that there is sufficient evidence regarding the subclass members' claims.  *See id.* at PageID.3048.

Accordingly, these individualized inquiries also prevent the Court from determining that Plaintiff's proposed subclass satisfies the commonality requirement under Rule 23(a)(2).

### c.  Additional Commonality Issues

While the Court already finds that commonality is lacking for both the amended class and subclass, the Court takes notice of both Aramark's and Trinity's arguments that commonality is also specifically absent as it relates to the remaining § 1983 *Monell* claims against them.  ECF No. 86, PageID.3523–24; ECF No. 88, PageID.3657–59.  In order to consider Plaintiff's Eighth Amendment claim, the Court must consider (1) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation; and (2) if the officials, Aramark and Trinity, acted with a sufficiently culpable state of mind.  *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *see also* ECF No. 76, PageID.2814.

Aramark argues that its state of mind as to each class or subclass member is not capable of class-wide resolution through common proof since it had "different levels of information about individual prisoners and their medical situations at various times."  ECF No. 86, PageID.3524.  Additionally, it asserts that its

knowledge would vary by each facility, "particularly as not all therapeutic diets were universally available." *Id.* At the hearing, Aramark emphasized its concerns with the subjective component of Plaintiff's Eighth Amendment claims.

Trinity claims that there is no evidence for the proposed class that it acted with "deliberate indifference" to any proposed class member's health or safety to certify a class based upon the subjective component of an Eighth Amendment prisoner claim. ECF No. 88, PageID.3658. Specifically, it asserts that Plaintiff fails to demonstrate that Trinity "consciously disregarded a substantial risk of serious harm" for any of the proposed class members. *Id.* Trinity argues that such an analysis would depend upon "particularized proofs and individualized medical conditions and resulting injuries." *Id.* at PageID.3659. At the hearing, Trinity also emphasized its concerns with the subjective component of Plaintiff's Eighth Amendment claims.

In his Reply briefs to both Aramark and Trinity, Plaintiff claims that he does not seek compensation for his injuries. *See, e.g.*, ECF No. 97, PageID.4187. Rather, Plaintiff insists that the members of the class and subclass only seek to have their diet comply with their constitutional rights and "to receive compensation for not receiving what they were constitutionally entitled to." *See, e.g.*, ECF No. 99, PageID.4203. He thus argues that whether he or any other class or subclass member suffered physical harm from Aramark's or Trinity's conduct is "completely irrelevant." *Id.* Further, he asserts that neither of his constitutional claims requires

an individualized inquiry. *Id.* At the hearing, Plaintiff reiterated that his claims do not require individualized inquiries.

The Court notes, however, that compensatory damages can only be awarded for violations of constitutional rights upon proof of an injury caused by the alleged violation(s). *See King v. Zamiara*, 788 F.3d 207, 214 (6th Cir. 2015) ("[A] plaintiff must demonstrate that he or she suffered an actual injury in order to receive compensatory damages for violations of his or her constitutional rights."). Plaintiff's disclaimer that he does not intend to seek compensation for his injuries raises further questions for the Court regarding the typicality and adequacy of his claims under Rule 23(a). For example, his decision to not seek compensation for his injuries may not be typical of the claims of the class or subclass members. However, since the Court finds a failure of proof on the issue of commonality, "it is unnecessary to resolve whether [Plaintiff has] satisfied the typicality and adequate-representation requirements of Rule 23(a)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n. 5; *see also Salem v. Mich. Dep't of Corr.*, No. X, 2019 WL 4409709, *7 (E.D. Mich. Sept. 16, 2019).

In sum, Plaintiff is unable to establish the prerequisites of Rule 23(a) as the class and subclass are currently defined.

### C. Plaintiff's Instant Action Going Forward

The Court's decision not to certify the proposed class and subclass does not preclude Plaintiff from pursuing his remaining claims in his individual capacity. Pursuant to this Court's May 29, 2019 Order, Plaintiff's Eighth Amendment claims against Defendants (Counts II and III) and implied warranty claim against Defendants Aramark and Trinity (Count IX) will proceed. ECF No. 76.

The Constitution does not permit inhumane prisons. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[H]aving stripped [inmates] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Mingus v. Butler*, 591 F.3d 474, 479 (6th Cir. 2010) (quoting *Farmer*, 511 U.S. at 833). The conditions under which a prisoner is confined, therefore, are subject to scrutiny under the Eighth Amendment. *Farmer*, 511 U.S. at 832. In its prohibition of "cruel and unusual punishments," the Eighth Amendment imposes duties on prison officials, including the responsibility of ensuring inmates receive adequate food. *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

The Sixth Circuit recognizes that a complaint "about one of the major requirements of life" is neither a frivolous nor a *de minimis* grievance. *See Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018) (describing the inadequacy of the food portion at issue in plaintiff's improperly dismissed § 1983 action against a prison

guard for First Amendment retaliation). Further, the Sixth Circuit has held that the Eighth Amendment requires prison officials to provide inmates with a diet that is nutritionally adequate for the maintenance of normal health. *Cunningham v. Jones*, 567 F.2d 653, 656 (6th Cir. 1977); *Heinz v. Teschendorf*, No. 05-73470, 2006 U.S. Dist. LEXIS 98030, at *23–24 (E.D. Mich. Aug. 1, 2006).

Accordingly, while the Court concludes that Plaintiff is unable to satisfy the procedural requirements for class certification, it recognizes the gravity of resolving Plaintiff's remaining claims concerning the adequacy of the standard fare diet he receives in the MDOC.

### V. CONCLUSION

For the reasons articulated above, **IT IS ORDERED** that Plaintiff's Motion for Class Certification [#80] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court shall meet and confer as to how to best proceed with Plaintiff's individual claims asserted in this action. The parties shall appear for a Status Conference on **May 8, 2020 at 11:30 a.m.**

**IT IS SO ORDERED**.

Dated:        April 8, 2020

                                    /s/Gershwin A. Drain
                                    HON. GERSWHIN A. DRAIN
                                    United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 8, 2020, by electronic and/or ordinary mail.

/s/ Teresa McGovern

Case Manager