# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

TEMUJIN KENSU,

Plaintiff,

v

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al

Defendants.

No. 2:18-cv-10175

HON. GERSHWIN A. DRAIN

MAG. DAVID R. GRAND

_____

Keith l. Altman (P81702)
Attorney for Plaintiff
The Law Office of Keith Altman
33228 W 12 Mile Road, Suite 375
Farmington Hills, MI 48331
516-456-5885
kaltman@lawampmmt.com

Bradford S. Moyer (P51451)
Attorneys for Defendant Trinity
Services
Group, Inc.
Plunkett Cooney
950 Trade Centre Way, Suite 310
Kalamazoo, MI 49002
(269) 226-8844
bmoyer@plunkettcooney.com

James T. Farrell (P35400)
Assistant Attorney General
Attorney for MDOC Defendants
MDOC Division
P. O. Box 30217
Lansing, MI 48909
(517) 335-3055
farrellj@michigan.gov

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT TRINITY'S MOTION FOR SUMMARY JUDGMENT

## ORAL ARGUMENT REQUESTED

Plaintiff hereby opposes the Motion for Summary Judgment filed by Defendant Trinity Services Group, Inc. ("Trinity"). Plaintiff relies upon the factual assertions and legal arguments set forth in his Brief in Support, which is being filed contemporaneously with this Motion.

In its motion, Trinity makes certain allegations. The plaintiff responds as follows:

1. As to the allegation in ¶1, Plaintiff admits the allegation.

2. As to the allegation in ¶2, Plaintiff admits the allegation.

3. As to the allegation in ¶3, Plaintiff admits the allegation and accepts as correct Trinity's assertions of law.

4. As to the allegation in ¶4, Plaintiff denies the allegation. For

reasons set out more fully in PLAINTIFF'S BRIEF IN OPPOSITION TO TRINITY'S MOTION FOR SUMMARY JUDGMENT, Plaintiff has adduced evidence on which a reasonable jury could return a verdict for Plaintiff on this issue. *Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 248 (1986).

5. As to the allegation in ¶5, Plaintiff denies the allegation. For

reasons set out more fully in PLAINTIFF'S BRIEF IN OPPOSITION TO TRINITY'S MOTION FOR SUMMARY JUDGMENT, Plaintiff has

adduced evidence on which a reasonable jury could return a verdict for Plaintiff on this issue. *Id.*

6. As to the allegation in ¶6, Plaintiff denies the allegation. For reasons set out more fully in PLAINTIFF'S BRIEF IN OPPOSITION TO TRINITY'S MOTION FOR SUMMARY JUDGMENT, Plaintiff has adduced evidence on which a reasonable jury could return a verdict for Plaintiff on this issue. *Id.*

7. Counsel has conferred with counsel for the above-named defendant about the issues raised in this Motion, but the parties have not reached any agreement.

WHEREFORE, Plaintiff respectfully requests that DEFENDANT TRINITY'S MOTION FOR SUMMARY JUDGMENT be denied.

Dated: May 3, 2021.

Respectfully submitted,

 /s/ Keith Altman
Keith Altman (P81702)
The Law Office of Keith Altman
33228 W 12 Mile Road, Suite 375
Farmington Hills, MI 48331
516-456-5885
kaltman@lawampmmt.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TEMUJIN KENSU,

Plaintiff,

v

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al

Defendants.

No. 2:18-cv-10175

HON. GERSHWIN A. DRAIN

MAG. DAVID R. GRAND

_____

Keith l. Altman (P81702)
Attorney for Plaintiff
The Law Office of Keith Altman
33228 W 12 Mile Road, Suite 375
Farmington Hills, MI 48331
516-456-5885
kaltman@lawampmmt.com

Bradford S. Moyer (P51451)
Attorneys for Defendant Trinity
Services
Group, Inc.
Plunkett Cooney
950 Trade Centre Way, Suite 310
Kalamazoo, MI 49002
(269) 226-8844
bmoyer@plunkettcooney.com

James T. Farrell (P35400)
Assistant Attorney General
Attorney for MDOC Defendants
MDOC Division
P. O. Box 30217
Lansing, MI 48909
(517) 335-3055
farrellj@michigan.gov

_____

## PLAINTIFF'S BRIEF IN SUPPORT OF
## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT TRINITY'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

CONCISE STATEMENT OF ISSUES PRESENTED ............................iv

CONTROLLING/APPROPRIATE AUTHORITY ................................... vi

LOCAL RULE CERTIFICATION ..............................................................vii

STATEMENT OF FACTS .......................................................................1

   A.  BACKGROUND AND PROCEDURAL HISTORY ..........................1

   B.  RELEVANT DEPOSITION TESTIMONY ......................................2

ARGUMENT ..........................................................................................5

   A.  Plaintiff Exhausted Administrative Remedies ................................5

   B.  Trinity Was Deliberately Indifferent To Plainitffs Contitutional
Right to an Adequate Diet ................................................................12

      1.  Evidence from which a reasonable juror could conclude that
Plaintiff suffered a serious medical need at the time Trinity provided
food service ......................................................................................12

      2.  Evidence from which a reasonable juror could conclude that
Trinity employees had "a sufficiently culpable state of mind." ........14

   C.  Trinity's Training And Supervision Were Inadequate ..................15

   D.  Plaintiff has alleged an injury and sought compensatory damages
for violations of 42 U.S.C. §1983. ..........................................................18

   E.  Trinity breached its implied warranty. ..........................................21

   F.  Plaintiff's demands for punitive damages are not barred. ............23

   G.  Trinity is not entitled to qualified immunity. ...............................23

CONCLUSION .......................................................................................24

CERTIFICATE OF SERVICE ..............................................................26

# TABLE OF AUTHORITIES

## Cases

*Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) .........................24

*Cunningham v. Jones,* 567 F.2d 653 (6th Cir. 1977)..............................16

*Flakes v. Vangordon*, 2015 U.S. Dist. LEXIS 155156, (WDMI, April 14, 2015)................................................................................................11

*Jones v. Mich. Dep't of Corr.*, 2008 U.S. Dist. LEXIS 21625, (WDMI, March 18, 2008.) ....................................................................................6

*McCune v. Grand Rapids*, 842 F.2d 903, (6th Cir.1988) ..........................8

*McNees v. Torrey*, 2021 U.S. Dist. LEXIS 60034, (WDMI, March 4, 2021.)..................................................................................................6

## Statutes

42 U.S.C. §1983 .........................................................................................8

# CONCISE STATEMENT OF ISSUES PRESENTED

I.  Where Plaintiff has adduced evidence on which a reasonable jury could conclude that he exhausted his administrative remedies prior to filing this lawsuit against Trinity, are Plaintiff's claims barred under the PLRA?

   Trinity Responds: Yes
   Plaintiff Responds: No

II.  Where Plaintiff has adduced evidence on which a reasonable jury could conclude that he suffered a serious medical need at the time Trinity provided food service, that Trinity was aware of this condition, and that Trinity was deliberately indifferent to this condition, is Trinity entitled to summary judgment as a matter of law?

   Trinity Responds: Yes
   Plaintiff Responds: No

III.  Where Plaintiff has adduced evidence on which a reasonable jury could conclude that, during the time it provided food service, Trinity engaged in a practice, and maintained a policy of, improper training or supervision, which practice and policy promoted deliberate indifference to the serious medical needs of Plaintiff, is Trinity entitled to summary judgment as a matter of law?

   Trinity Responds: Yes
   Plaintiff Responds: No

IV.  Where Plaintiff has adduced evidence on which a reasonable jury could conclude that Plaintiff has alleged an injury and sought compensatory damages for violations of 42 U.S.C. §1983, is Trinity entitled to summary disposition?

Trinity Responds: Yes
Plaintiff Responds: No

V.    Where Plaintiff has adduced evidence on which a reasonable
      jury could conclude that on Trinity breached an implied
      warranty to Plaintiff as it relates to food he received while
      Trinity was providing food services for the MDOC, is Trinity
      entitled to summary judgment?

      Trinity Responds: Yes
      Plaintiff Responds: No

VI.   Where Plaintiff has adduced evidence on which a reasonable
      jury could conclude that Trinity's conduct was motivated by evil
      motive or intent, or that it involved reckless or callous
      indifference to federally protected rights, are Plaintiff's
      unsupported demands for punitive damages barred?

      Trinity Responds: Yes
      Plaintiff Responds: No

VII.  Where Plaintiff has adduced evidence on which a reasonable
      jury could conclude that Trinity's actions were taken with an
      unconstitutional or otherwise unlawful motive, and that the
      reasons offered by Trinity are merely pretextual and not
      reasonable in light of its role, is Trinity entitled to qualified
      immunity?

      Trinity Responds: Yes
      Plaintiff Responds: No

# CONTROLLING/APPROPRIATE AUTHORITY

*Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009)

*Cunningham v. Jones,* 567 F.2d 653 (6th Cir. 1977)

*Flakes v. Vangordon*, 2015 U.S. Dist. LEXIS 155156, (WDMI, April 14, 2015)

*Jones v. Mich. Dep't of Corr.*, 2008 U.S. Dist. LEXIS 21625, (WDMI, March 18, 2008.)

*McCune v. Grand Rapids*, 842 F.2d 903, (6th Cir.1988)

*McNees v. Torrey*, 2021 U.S. Dist. LEXIS 60034, (WDMI, March 4, 2021.)

## LOCAL RULE CERTIFICATION

I, Keith Altman, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

Dated: May 3, 2021                                     /s/ *Keith l. Altman*
                                                       Keith l. Altman

# STATEMENT OF FACTS

## A. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Temujin Kensu is a state prisoner in the custody of the Michigan Department of Corrections. His birth name is Frederick Thomas Freeman; his MDOC identification number is 189355. He is serving a nonparolable life sentence.

Plaintiff has been housed for several years at the Macomb Correctional Facility (MRF). He filed the present lawsuit on January 16, 2018. ECF 1, Complaint. Three months later he filed his First Amended Complaint. ECF 15. On November 2, 2018, he filed the operative complaint entitled "Second Amended Class Action Complaint." ECF 50. The central claim is that the defendants – the MDOC and several of its employees as well as two of its food vendors, Aramark and Trinity – were deliberately indifferent to Plaintiff's serious medical needs by knowingly providing him with insufficiently nutritious food that cannot sustain normal health.

This case was originally filed as a class action suit. The Court bifurcated discovery between class certification issues and the merits of the claim. Following the close of class discovery, the Plaintiff moved to

certify the proposed classes under Fed.R.Civ.P. 23. ECF 80, Motion for Class Certification. On April 8, 2020, the Court denied plaintiff's motion. ECF 113, Opinion and Order Denying Plaintiff's Motion for Class Certification.

Discovery closed on January 31, 2021. Dispositive motions were due to be filed March 1, 2021, with responses due on May 3, and replies by May 17. A settlement conference is scheduled with Magistrate Judge Grand for June 8; a final pretrial conference is scheduled for July 19; a jury trial is scheduled for August 3.

## B. <u>RELEVANT DEPOSITION TESTIMONY</u>

Kensu has filed grievances about the food he has been served over the last five years.  ECF 135-10, p.110:12-16.  He consistently complained to his medical professionals, Trinity, and the MDOC.  *Id.* p. 110:17-118:1. There is a statewide standardized menu (SWSM) and Plaintiff's meals are based on the SWSM.  *Id.* p. 111:11-114:24.

Plaintiff has personally observed the shorting of his food and has mentioned this to Defendants.  *Id.* p. 115:22-116:21. Furthermore, when asked, the workers serving his food told Kensu that they were ordered tp use the wrong scoops, as Kensu himself observed.  *Id.*  Each diet is

supposed to have a specific quantity of food.  *Id.* p. 116:23-118:12. Kensu was shorted on more than 100 occasions.  *Id.* p. 118:22-119:25.

There were numerous articles concerning Trinity's performance at the MDOC, leading to Trinity no longer providing food service.  *Id.* p. 120:254-121:19. Kensu personally observed unsanitary conditions.  *Id.* p. 121:21-123:4.

Kensu required medical diets for his conditions and the diets provided to him did not meet his medical needs.  *Id.* p. 124:1-127:3.  On more than 100 occasions, Plaintiff did not received his prescribed diet. *Id.* p. 127:4-128:4. Despite claims to the contrary, Kensu's diet is primarily based on the SWSM and he was served the SWSM on numerous occasions.  *Id.* p. 129:12- 130:7.

When Plaintiff is served food that he cannot eat, he gives away those items or throws them away.  *Id.* p. 130:8-9.  The shortage has a direct effect on Kensu, leading to his being constantly hungry.  *Id.* p.130:11-20.

Plaintiff has extensively researched diet and nutrition and has spent thousands of hours in that pursuit.  *Id.* p. 130:21-131:2. Not receiving adequate food leads to hunger.  *Id.* p. 131:17-132:5.

Kensu has discussed his dietary needs countless times with numerous MDOC personnel. *Id.* p.132:14-133:19. On numerous occasions, Kensu has submitted kites about his diet which have been ignored. *Id.* p. 133:20-136:15. Plaintiff complained he was not getting his prescribed diet and was ignored or dismissed. *Id.* p.136:16-137:9. Furthermore, Kensu communicated with Defendant Pat Willard about the food issues. *Id.* p. 137:10-137:20. Because of his complaints, Kensu has been retaliated against. *Id.* p. 138:1-139:7.

When he does not receive his proper meals, Kensu has no choice but to try to supplement his diet with food he must purchase from the prison commissary. *Id.* p. 139:8- 140:22.

Plaintiff has consistently complained about his diet. *Id.* p. p142:14-143:6. He has asked repeatedly that food he is provided include the proper nutrients. *Id.* p. 143:8- 145:23. Often, Kensu receives substitutions to the diet which have significant deficiencies or that he cannot eat. *Id.* p. 146:2-149:3.

Kensu personally observed the difficulties with Trinity. *Id.* p. 149:4-7. Plaintiff discussed these problems with Trinity personnel. *Id.* p. 149:10-19.

# ARGUMENT

A review of Kensu's testimony shows that (1) Kensu complained about the dient he received hundreds of times between Kites, grievances, and direct communications to Trinity and the MDOC; (2) Kensu did not receive the diet he had been prescribed; (3) Defendants knew he was not receiving the diet he was prescribed; (4) Kensu suffered because he was hungry and was forced to supplement his diet from the commissary at his own expense; (5) Despite knowing that he was not receiving the diet he was prescribed, Defendants were deliberately indifferent to his needs; (6) The issues in this case have not been addressed in other cases; and (7) Defendants are not entitled to qualified immunity.

## A. Plaintiff Exhausted Administrative Remedies

It is generally true, as Trinity has alleged, that "…a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies before filing suit." Trinity's Motion for Summary Judgment, ("Trinity MSJ") Page 26. (Citations omitted.) It is also non-controversial that "[i]n order to properly exhaust administrative remedies, prisoners must complete the

administrative review process in accordance with the deadlines and other applicable procedural rules." *Id.*

There are, however, exceptions to these general rules. Where a prisoner alleges that the MDOC has wrongly denied a grievance, the court may deem that, under some circumstances, a Plaintiff's efforts to exhaust, though less than perfect, "were sufficient under the circumstances." *McNees v. Torrey*, 2021 U.S. Dist. LEXIS 60034, (WDMI, March 4, 2021.)

Moreover, Trinity fails to mention that in many cases, prisoner complaints do not need to be exhausted through the grievance process at all, but may, according to the subject of the grievance, be exhausted by directing concerns to the Warden's Forum before filing his federal action. See MICH. DEP'T OF CORR., Policy Directive 03.02.130, P E (identifying the Warden's Forum, see MICH. DEP'T OF CORR., Policy Directive 04.01.150, as the mechanism for prisoners to challenge the content of a policy.) *Jones v. Mich. Dep't of Corr.*, 2008 U.S. Dist. LEXIS 21625, (WDMI, March 18, 2008.)

Plaintiff admits to some confusion about why Trinity claims that Plaintiff has never exhausted his administrative remedies concerning his

complaints over various aspects of the shockingly bad food served to him and other prisoners. Exhibit E to the MDOC's Motion for Summary Judgment, ECF 135-9, lists 77 grievances filed by Plaintiff in the three years before the suit was filed that have progressed to completion. Trinity cannot on the record before this Court establish that Plaintiff did not exhaust his administrative remedies. In further support, at PageID 4909, the report lists a grievance with the category of 9D that was fully resolved on August 10, 2015. Category 9D is a food related complaint of dietary/substitution. See ECF 80-8, PageID 3273. This fully exhausted grievance shows clearly that Plaintiff has met the exhaustion requirement. Furthermore, the burden is on Trinity to demonstrate that Kensu has not exhausted his administrative remedies. 77 fully completed grievances suggests that he has.

Trinity admits that, in addition to the fully exhausted grievance referred to above, Plaintiff had previously filed 28 grievances over the very claims at issue in this case! ECF 135-9, pg. 8. Trinity's motion does not argue any of the following: that the unconstitutional conditions complained of in any of the 28 grievances were ever corrected; that any of those 28 grievances were unexhausted; nor that the conditions raised

were dissimilar from the present causes of action. Instead, Trinity argues that the exhausted issues were "stale." *Id.* Trinity asserts that, because "those grievances complained of events that occurred four to eight years before this case was filed... [therefore]...[a]ny claim arising from the conduct complained of in those grievance is time-barred and not part of this case." *Id.*

For this proposition, Trinity cites *McCune v. Grand Rapids*, 842 F.2d 903, 905 (6th Cir.1988). *McCune* dealt with a completely different issue: the proper calculation of the statute of limitations in Michigan for §1983 lawsuits. There is no mention in that case of inmate grievances at all, and nothing in *McCune* can be said to stand for the proposition that grievances filed by a prisoner grow "stale" in the same period of time in which a §1983 cause of action is barred by a statute of limitation. In any event, every time that Plaintiff was served a meal in violation of his previously exhausted grievance, the statute of limitations resets for that particular violation. In other words, to the extent that Plaintiff's grievances as identified in his Second Amended Complaint were still not remedied during the three years before this action, Plaintiff has already exhausted his administrative remedies. It would be absurd to suggest

that Plaintiff needed to file a Stage Three grievance for each and every meal he received that was wrong.

Clearly, then, Plaintiff did exhaust his grievances against the MDOC regarding food related issues. Also, by Trinity's own calculation of "staleness", (a concept that Plaintiff rejects as being irrelevant,) at least one is not "stale". The grievance that was exhausted on August 10, 2015, well within the time that Trinity was under contract to provide food for Plaintiff and other prisoners.

These startling numbers alone demonstrate conclusively that Plaintiff is not a "boy crying 'wolf'". The food was very bad and it stayed very bad. Plaintiff asks the court to view this poorly supported affirmative defense for what it is: an attempt to avoid responsibility for providing inhumane food in inhumane amounts to all prisoners in the State of Michigan before during and after Trinity's contract.

As a final point, Plaintiff asks the court to consider his deposition testimony regarding his having frequently brought complaints about food and about Trinity policies and practices to the Warden's Forum.

> "I served as a Warden's Forum member and took personal complaints to the administration about Trinity on a regula basis. I served with Warden Haas and with Warden Warren, and one of my duties was to go to the Warden's Forum meetings

and complain on behalf of the prisoners, and also raise my own complaints too, which were identical as far as quality, portions, abuse of kitchen workers, threatening inmates and not serving proper portions, threatening inmates to not talk about contaminated food, the filthy kitchen, et cetera, et cetera."

ECF 135-10, p. 70-16-25.

Counsel for Plaintiff respectfully suggests that Trinity has not carried its burden of proving that Plaintiff has failed to exhaust his administrative remedies. The record is uncontradicted that Plaintiff filed and exhausted remedies on at least one grievance over food, that he frequently and continuously brought complaints to the Warden's Forum, and that he filed 28 grievances over conditions that were never fixed. Trinity has not demonstrated that any of these grievances were not directed related to the conduct alleged in this suit, nor does it allege that any of the grievances discussed herein were not fully exhausted. Neither does Trinity allege that any of the conditions complained of in those grievances were ever corrected. Those grievances all sought redress for Plaintiff's claims that the individuals, agencies and companies were continuing to provide him and other prisoners in Michigan with shockingly bad food in miniscule amounts.

The evidence shows that these conditions were continuing as of the time of Plaintiff's deposition. See, e.g., Deposition of Plaintiff, ECF 135-10, pp. 61:10-62:22 10-20; 17:5-24. A separate exhibit filed by MDOC shows that of 197 complaints filed by Plaintiff (on various topics), only 3 were ever resolved. ECF 135-9.

Logically, it could be argued that the fact that Plaintiff complained so often, and in several fora, was because Plaintiff is a whiner. It is, however, equally logical that the MDOC and it's contractor, Trinity, deliberately maintained prisoners in unconstitutionally bad conditions, and that they have made no serious effort to correct such conditions. *See, e.g.*, *Flakes v. Vangordon*, 2015 U.S. Dist. LEXIS 155156, (WDMI, April 14, 2015) ("The evidence that Plaintiff has successfully pursued many other grievances and similar matters, in the Court's estimation, supports Plaintiff's position as it demonstrates his diligence in pursuing his claims and grievances.")

Whichever it is, there is ample evidence in the record from which a reasonable juror could conclude that Plaintiff has exhausted his remedies and the Motion for Summary Judgment filed by Trinity should be denied as to this issue.

## B. Trinity Was Deliberately Indifferent To Plainitffs Contitutional Right to an Adequate Diet

As Trinity has written in its Motion for Summary Judgment, "[a] constitutional claim for denial of medical care has "objective and subjective components." The objective component requires the existence of a "sufficiently serious" medical need. To prevail, an "inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." (citations omitted.) There is record evidence from which a reasonable juror could conclude that Trinity was deliberately indifferent to Plaintiff's serious medical needs.

### 1. Evidence from which a reasonable juror could conclude that Plaintiff suffered a serious medical need at the time Trinity provided food service.

In his deposition, Plaintiff described some, but not all, of his serious medical conditions: when given food containing gluten, he has experienced bowel pain and cramping, followed by a rash and swollen skin; ringing headaches, ear infections and other immune allergic responses. ECF 135-10, p. 123:12-25. He suffers from collagen-related

tissue disease and degenerative disc disease. *Id.* p. 124:4-8. He experiences muscle myopathy and elevated antinuclear antibodies. *Id.* p. 151:17. He has had emergency surgery to remove sections of his bowels.

The fact that the MDOC has placed Plaintiff on a therapeutic diet demonstrates that he suffers from a serious medical condition. *Id.* p. 59: 6-8; pp. 61:2- 63-3; p. 64:8-22; p. 66:14-17. ECF 136-2, Interrogatory Answers, #6. It is undisputed that the MDOC diet manual requires that all therapeutic diets shall be served when ordered by the "MP or dentist." ECF 135-7.

Defendant deliberately misstates Plaintiff's deposition testimony: he did not say that no doctor determined whether any of his medical problems were caused by his diet. Instead, he took issue with the manner in which a question was asked. What he did say was, "If you mean, 'has a specialist said that my disease is affected by diet,' absolutely. That's why I have dietary restrictions. I think that's what you're asking."

In its Motion, Trinity says, "[Plaintiff's] requests for his special diets were initially denied as not medically necessary." By the clear language used, by alleging the inverse statement, Trinity is saying,

"though initially denied, his subsequent requests were granted because they were medically necessary."

## 2. Evidence from which a reasonable juror could conclude that Trinity employees had "a sufficiently culpable state of mind."

There is ample evidence in the record from which a juror could conclude that Trinity employees knew or should have known that a doctor had prescribed a therapeutic diet for Plaintiff. Despite that knowledge, Trinity employees routinely and over long periods of time deliberately refused to provide the prescribed diets. For instance, Plaintiff testified as follows:

> Q. "So how many times do you contend that you spoke to a Trinity food supervisor and said, "I'm not getting my low fat, high protein diet pursuant to my doctor's orders. Fix it now"?
> A. "Fifty, easily, and multiple complaints to the dietician and meeting with healthcare staff who contacted the Trinity workers, and unit staff calling the kitchen and speaking to the Trinity workers."
> Deposition of Plaintiff, ECF 135-10, p. 60:13-19.
>
> ....
>
> "I alleged that Trinity knowingly and willfully refused to serve me the food that my physician ordered for me in compliance with the order on

> the top of the menu slip, that I would personally go to the kitchen and meet with them on a regular basis or have unit staff call and say, 'Why is this on my tray? I can't have this.' 'Well, that's all you're getting. You're not getting anything else.'" *Id.* p. 71:8-14.
>
> ….
>
> "They do know they're not giving me the proper food or diet as ordered by the physician." *Id.* p. 64:21-22. See also, p. 64:8-22; p. 67:11-17; p. 68:8-11; p. 70:11-25.

Plaintiff respectfully submits that the afore-described evidence also shows a reasonable jury could conclude that, during the time it provided food service, Trinity employees had "a sufficiently culpable state of mind" regarding their failure to provide Plaintiff with a therapeutic diet despite knowing that he suffered from a serious medical condition.

## C. <u>Trinity's Training And Supervision Were Inadequate</u>

Plaintiff respectfully submits that the aforedescribed evidence also shows that a reasonable jury could conclude that, during the time it provided food service, Trinity engaged in a practice, and maintained a policy of, improper training and/or supervision. A reasonable juror certainly could conclude that Plaintiff's direct personal observations of

Trinity's dogged persistence in refusing to serve him therapeutic meals shows faulty training and supervision.

In the instant litigation, Trinity seeks to take unfair advantage of the fact that Plaintiff is not able to produce the testimony of Trinity employees, or corporate training documents, or other types of evidence, and yet Plaintiff asks this court to consider that Trinity has never produced such documents in discovery, despite pending requests for same.

The Sixth Circuit has pointed out the disparity between a prisoner and a prison system when it comes to marshalling facts in such cases to be able to obtain a fair hearing from a court, saying that "the burden of proof as to the adequacy of the one meal actually furnished to maintain normal health must fall upon Defendants since such knowledge is peculiarly within their possession." *Cunningham v. Jones,* 567 F.2d 653, 659-60 (6th Cir. 1977). As in Judge Peck said in his concurring opinion, "the record clearly establishes that having established a prima facie case the plaintiff-appellant could not procure and offer further essential evidence which was readily available to the defendant-appellee, thereby justifying a shifting of the burden of proof." Id. Plaintiff respectfully

suggests that Trinity seeks to take undue advantage of his status as a prisoner to obtain an outcome to which they are not entitled.

Trinity's counsel opines that "[a]t no point has Plaintiff produced a single document or a single witness corroborating these allegations… [and]…[t]here has been no evidence of any policy or custom on the part of Trinity leading to any alleged injury. This is a highly inappropriate claim, given the fact that Trinity has produced next to nothing.

Nor is this an appropriate standard for a summary motion. There is no requirement whatsoever that Plaintiff produce documents or put forth corroborating witnesses. Plaintiff's testimony as discussed throughout this response is sufficient to raise a question of material fact regarding whether he has adduced evidence on which a reasonable jury *could* conclude that Trinity engaged in a practice, and maintained a policy of, improper training or supervision.

It is therefore a matter of record that Plaintiff notified Trinity staff on many occasions, "[f]ifty, easily, and multiple complaints to the dietician and meeting with healthcare staff who contacted the Trinity workers, and unit staff calling the kitchen and speaking to the Trinity workers." Deposition of Plaintiff, ECF 135-10, p. 60:18-19. Hearing this,

a juror could well conclude that all Trinity workers were not "tortfeasors", as counsel has alluded to; instead, jurors could conclude that Trinity workers were trained to ignore inmate's serious medical needs, or that Trinity had a policy of ignoring them, or both.

**D. Plaintiff has alleged an injury and sought compensatory damages for violations of 42 U.S.C. §1983.**

Plaintiff relies on his arguments and record citations regarding actual injuries, set forth in Section B.1., and he and reasserts them here as if set forth fully herein.

Defendants seem to suggest that Plaintiff must demonstrate a long term systemic injury as a result of Defendants conduct. Not so. This extremely narrow view misses the point. Plaintiff was entitled to adequate nutrition whether he got the statewide standardized menu or got a diet which was medically necessary. Every time he did not receive the meal to which he was constitutionally entitled, he suffered harm.

Each time he did not receive the correct meal, Plaintiff was then faced with a choice to either go hungry or spend personal funds to receive the nutrition he was entitled to.

Q.   So how -- when you've not been able to eat part of the diet you receive and were hungry, what did you do to fix that hunger?

A.   You either had to buy your own food or go --

MR. FARRELL:  Let me -- let me object to form.

THE WITNESS:   I either had to buy my own food or go without.

BY MR. ALTMAN:

Q.   Now, what kind of food would you buy?

A.   You just buy that from the prison commissary and as I stated in the litigation, that's 90 percent junk too, so I'm really restricted in what I can buy.

Q.   So what are the items that, you know, are in the commissary that you can buy and eat?

A.   Brown rice, beans, corn chips, fish, pickles, jalapenos, things that are -- you know, except for the fish, things that are not really healthy, but they're not as horrible as honey buns and candy bars and, you know, pop and things like that. You know, the junk stuff. I don't buy any of the junk stuff.

Q. Now, can you get stuff immediately if you want? I mean, can you just walk right down to the commissary and take whatever –

A. No. It's every two weeks. It's every two weeks, so you've got to have –

Q. So am I understanding this correctly that if you want a meal -- they gave you the statewide

> standardized menu and you couldn't eat part of it
> and you were still hungry, if you didn't have any
> food in your cell, there would be nothing you could
> do about it at that particular instant?
> A. No, not unless somebody is willing to give you
> their food and it was a food item that you could eat.
> See, one thing is because I'm so restricted in my
> diet, most guys don't have the foods that I can eat.
> Most guys don't keep little bags of fish in their cell,
> you know. There's a small part of the population
> that eats little bags of fish, so that's something I
> can eat safely, so if I ask somebody for food, they're
> going to have like a sausage or a honey bun or a
> candy bar, you know, something like that probably
> 90 percent of the time.

ECF 135-10, pp. 139:8-140:22

Trinity cannot avoid the conclusion that there is a question of material fact as to whether the meals provided by Trinity were in compliance with the specifications of the MDOC and were in compliance with the meals as ordered by Plaintiff's medical providers.

Additionally, regarding whether the court should grant summary judgment because, as Trinity alleges, Plaintiff has failed to present evidence on which a reasonable juror could find that he has suffered compensatory damages, Plaintiff reasserts his Answer to Interrogatory #13:

"Plaintiff did not receive the diet that he was medically supposed to receive. As such Plaintiff is entitled to the contractual value of the meal that Trinity was paid. Because Plaintiff did not receive the value of the diet, Plaintiff has been shortchanged. Therefore, Plaintiff is entitled to economic damages for the value of the diet that Plaintiff was entitled to receive. In addition, because he was unable to eat the inappropriate food that was served to him, Plaintiff often went with hunger or was forced to expend his own personal resources to buy food from the commissary provided by Trinity at inflated prices." ECF 136-2, Answer to Interrogatory 13.

The contractual value of the meal that Trinity was paid for each is in the record. ECF 50-2, Pg. 3. Furthermore, Plaintiff has testified as shown above that he was forced to purchase food because he did not receive his proper meals.   Accordingly, a reasonable juror could determine the value that Plaintiff suffered compensatory damages during the time Trinity provided food service.

## E. **Trinity breached its implied warranty.**

Plaintiff's testimony concerning the adequacy of the food provided by Trinity creates a material dispute sufficient to defeat summary judgment on the breach of implied warranty claim.  Trinity impliedly warranted that the meals that it served were in compliance with the diet

as designed by the MDOC and were fit for human consumption.  The testimony of Plaintiff makes clear that the diet did not comply in material ways.

Plaintiff respectfully suggests that jurors are not ignorant of the state of nutrition science today and they know the difference between getting what you paid for and not getting it. The following sworn statements from Plaintiff's deposition provide a basis on which a juror might conclude that Trinity breached an implied warranty: "I watched this -- these interactions happen personally. I've watched the workers say, "Don't give him that. That's too much. Give him a smaller scoop," et.cetera." Deposition of Plaintiff, ECF 135-10, p. 60, l. 11-15; "I think there were multiple things, the diet being inadequate, being shorted on foods (indiscernible) menu that I didn't get, not being served the proper foods in compliance with the menu or the physician's orders, et cetera." *Id.* p. 69:8-12; "Your clients denied me the right portions of food by ordering the workers to not give me the right portions of food."; *Id.* p. 74:6-8; "I raise my own complaints too, which were identical as far as quality, portions," *Id.* p. 71:20-22; "I specifically said that the Trinity staff … punished, abused, threatened and intimated prisoners who attempted

to serve the proper portions, complained about filthy conditions, the wrong food, et cetera." *Id.* p. 74:23-75:3.

Summary judgment should be denied on this issue.

### F. **Plaintiff's demands for punitive damages are not barred.**

For many of same reasons set out in Sections B, C and E, hereinabove, Plaintiff suggests that a reasonable juror could easily conclude that Trinity's conduct was motivated by evil motive or intent, or that it involved reckless or callous indifference to federally protected rights. Based on evidence specifically identified previously in this pleading, a juror could find that Trinity was feeding inmates undersized portions of spoiled food and denying Plaintiff and others there medically necessary diets. On this evidence, a juror could easily find that Trinity was either evilly motivated or recklessly indifferent or both.

### G. **Trinity is not entitled to qualified immunity.**

Trinity is not entitled to qualified immunity.  For many of same reasons set out in Sections B, C and E, hereinabove, Plaintiff suggests that a reasonable juror could easily conclude that Trinity's conduct was

motivated by a deliberate indifference to Plaintiff and other inmates' right to be free from cruel and unusual punishment. Based on evidence specifically identified previously in this pleading, a juror could find that Trinity was feeding inmates undersized portions of spoiled food and denying Plaintiff and others there medically necessary diets. There is not question that it has been established that inmates are constitutionally entitled to an adequate diet.  See *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("The Sixth Circuit has held that the deliberate and unnecessary withholding of food that is essential to normal health can constitute the deliberate indifference to medical needs that violates the Eighth Amendment. See *Cunningham v. Jones*, 567 F.2d 653, 656 (6th Cir. 1977).")

Here, Plaintiff has established that he did not received his medically prescribed diet, that the food was spoiled, and that he did not receive the specified quantities of food.  On this evidence, a juror could easily find that Trinity carried out these actions merely to harm Plaintiff's rights and persons.

## CONCLUSION

WHEREFORE, for the reasons set forth in the forgoing BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT TRINITY'S MOTION FOR SUMMARY JUDGMENT, Plaintiff prays that this Court deny Trinity's Motion for Summary Judgment and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: May 3, 2021

*/s/Keith l. Altman*
Keith l. Altman (P81702)
Attorney for Plaintiff
The Law Office of Keith Altman
33228 W 12 Mile Road, Suite 375
Farmington Hills, MI 48331
516-456-5885
kaltman@lawampmmt.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **May 3, 2021**, I electronically filed the

foregoing paper with the Clerk of the Court using the ECF system

which will send notification of such filing as well as via US Mail to all

non-ECF participants.

*/s/ Keith Altman*_____
Keith l. Altman
Attorney for Plaintiff