UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

T<small>EMUJIN</small> K<small>ENSU</small>,

Plaintiff,

v.

M<small>ICHIGAN</small> D<small>EPARTMENT OF</small>
C<small>ORRECTIONS</small>, <small>ET AL</small>.,

Defendants.

_____/

Case No. 18-cv-10175

U.S. D<small>ISTRICT</small> C<small>OURT</small> J<small>UDGE</small>
G<small>ERSHWIN</small> A. D<small>RAIN</small>

## **OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#135]**

### I.  INTRODUCTION

On January 16, 2018, Plaintiff Temujin Kensu initiated this civil rights action against the Michigan Department of Corrections ("MDOC"), Patricia Caruso, Dan Heyns, Heidi Washington, Patricia Willard, Steve Zubek, Dr. Jeffrey Stieve, Dr. William Borgerding, and Lia Gulick.[1]  *See* ECF No. 1.  Plaintiff filed his Second Amended Class Action Complaint on November 2, 2018, alleging the food served in MDOC facilities is nutritionally "inadequate to sustain normal health" and that Defendants failed to provide medically necessary diets to inmates suffering from various medical conditions.  *See* ECF No. 50, PageID.1942-43.  Thus, Plaintiff

---

[1] Several other defendants named in the initial complaint have since been dismissed and are thus not discussed here.

1

brings claims for cruel and unusual punishment and conspiracy under the Eighth Amendment to the United States Constitution and 42 U.S.C § 1983. *Id.* at PageID.1965-70. He also brings disability discrimination claims under Title II and/or Title III of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. *Id.* at PageID.1970-74. Plaintiff also seeks a declaratory judgment pursuant to 28 U.S.C. § 2201. *Id.* at PageID.1963-64.

Presently before the Court is the MDOC Defendants' Motion for Summary Judgment (ECF No. 135). The motion is fully briefed, and the Court held a hearing on October 26, 2021. For the following reasons, the Court will **GRANT** the Defendants' motion.

## II.  BACKGROUND

### A. Factual Background

Around 1981, inmates at several facilities within the MDOC system rioted, in part, against the inadequacy of prison meals. ECF No. 50, PageID.1914. By 1991, MDOC implemented a "common fare" diet that included many fruits, vegetables, and meat items. *Id.* at PageID.1914-15.

Plaintiff is currently an inmate at the Macomb Correctional Facility located in New Haven, Michigan. *Id.* at PageID.1920. He contends that, in 2005, MDOC took control of the prisoner commissary and mandated that only junk food be sold, removing vitamins, nutritive drinks, and produce. *Id.* at PageID.1913.

Moreover, Plaintiff alleges the MDOC has deviated from the common fare diet since 2012 and now serves a diet that is inadequate to sustain normal health. *Id.* at PageID.1907. As part of this transition, MDOC allegedly removed numerous nutritional foods from the diet, including produce and proteins. *Id.* at PageID.1906-07. Plaintiff contends the diet now primarily consists of processed meats, cheese substitutes, white starches, and paste fillers. *Id.* at PageID.1910-11. He further avers the portions provided are also smaller than what is specified in the menu, overcooked, or watered down such that they are devoid of nutritional value. *Id.* at PageID.1917. Plaintiff asserts that the poor diet has exacerbated his various medical conditions, including heart disease, high blood pressure, a brain tumor, bowel disease, and food allergies. *Id.* at PageID.1914.

### B. Procedural Background

On January 16, 2018, Plaintiff filed his initial complaint on behalf of himself and similarly situated individuals against the Defendants listed above, Aramark Correctional Services, LLC, ("Aramark"), Trinity Services Group, Inc., ("Trinity"), Corizon, Inc, ("Corizon"), and several hundred unknown MDOC wardens and food service managers. ECF No. 1. Corizon moved for dismissal, which the Court granted on October 10, 2018. ECF No. 42. On November 2, 2018, Plaintiff filed a Second Amended Class Action Complaint. ECF No. 50. Aramark and Trinity moved for dismissal, and the Court dismissed various counts

as to both Defendants on May 29, 2019. ECF No. 76. After extensive briefing and argument, the Court denied Plaintiff's motion to certify a class on April 8, 2020, ECF No. 113, and was affirmed on appeal, ECF No. 127. On September 28, 2020, Plaintiff and Aramark stipulated to Aramark's dismissal. ECF No. 126. The MDOC Defendants filed the instant motion on March 1, 2021. ECF No. 135. Trinity also moved to dismiss Plaintiff's claims but settled with Plaintiff before the Court decided the motion. ECF No. 153. The Court dismissed Trinity from the action on August 13, 2021. *Id*.

### III. LAW & ANALYSIS

#### A. Plaintiff's Action is Barred by Claim Preclusion.

##### 1. Plaintiff's failure to respond to Defendant's claim preclusion argument amounts to a concession or waiver of the issue.

Defendants argue Plaintiff's action is barred against all the MDOC defendants by the doctrine of claim preclusion. ECF No. 135, PageID.4832. Specifically, they argue Plaintiff has filed several Eighth Amendment cases against prison officials in the last eight years, and the parties and claims in those lawsuits "show[] that the claims in the present case share a commonality with the claims and defendants that have been or could have been litigated in his other cases." *Id.* at PageID.4832-33.

Plaintiff does not defend against the claim preclusion argument in his response brief. *See generally* ECF No. 143. Instead, Plaintiff responds with a single sentence in the summary of his argument: "The issues in this case have not been addressed in other cases." *Id.* at PageID.6033. When asked about claim preclusion during the hearing, Plaintiff's counsel responded that the doctrine was inapplicable because the instant case concerns Plaintiff not receiving the diet to which he is entitled while the previous cases focused on his medical conditions. Plaintiff's counsel did not cite any authority in support of his argument.

The Court finds that Plaintiff has effectively conceded that his claims are barred by issue preclusion by not defending against Defendants' argument in his response. *See Degolia v. Kenton Cty.*, 381 F. Supp. 3d 740, 759–60 (E.D. Ky. 2019) ("[I]t is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (quoting *Rouse v. Caruso*, No. 6-cv-10961-DT, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011)) (internal quotation marks omitted); *see also Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (recognizing that a party's lack of response to a motion or argument therein is grounds for the district court's grant of a motion to dismiss and noting that "if a plaintiff fails to

5

respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion").

Plaintiff's failure to address the Defendants' claim preclusion argument was not mitigated during the hearing because Plaintiff did not sufficiently develop his counterargument, and it is thus waived. "In the Sixth Circuit, 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Nationwide Prop. & Cas. Ins. Co. v. Brown*, 260 F. Supp. 3d 864, 879 (E.D. Mich. 2017) (quoting *Meridia Prod. Liab. Litig. v. Abbott Laboratories*, 447 F.3d 861, 868 (6th Cir. 2006)). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

To the extent Plaintiff has defended against the claim preclusion argument, he has done so "in the most skeletal way." Thus, the Court finds he has conceded this issue and his claims are barred.

### 2. Plaintiff's action would be barred by claim preclusion even if he had not conceded the issue.

The Court finds that Plaintiff's claims would be barred by claim preclusion even if he had not conceded or waived the issue. Claim preclusion prevents parties from litigating matters that "should have been advanced in an earlier suit." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1 (1984).

> To establish claim preclusion, the defendants need to show (1) "a final judgment on the merits" in a prior action, (2) "a subsequent suit between the same parties or their privies," (3) an issue in the second lawsuit that should have been raised in the first, and (4) that the claims in both lawsuits arise from the same transaction.

*Wheeler v. Dayton Police Dep't*, 807 F.3d 764, 766 (6th Cir. 2015) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)).

When conducting claim preclusion analysis, the Court "look[s] not at the specific injuries that [the Plaintiff] alleges . . . but at the underlying *transaction* that gave rise to those injuries." *Id.* (citing *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 215 (6th Cir.1996)). Additionally, "[w]here the issues in separate suits are the same, the fact that the parties are not precisely identical is not necessarily fatal." *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 402 (1940). Privity exists between officers of the same government so that a judgment in a suit between a party and a representative of the government is preclusive in re-litigation of the same issue between that party and another officer of the government. *Id.*; *see also Dubuc v. Green Oak Twp.*, 312 F.3d 736, 751 (6th Cir. 2002) (finding privity exists between predecessor and successor in office when both are sued in their official capacities).

The record reveals Plaintiff brought three prison-conditions lawsuits prior to the instant action. ECF No. 135, PageID.4833-35. After review, the Court finds Plaintiff could have raised his claims in *Kensu v. Rapelje, et al.*, 12-cv-11877-

7

VAR.  In that case, Plaintiff alleged, *inter alia*, violations of the Eighth Amendment, Americans with Disabilities Act, and Rehabilitation Act because he was denied a diet that incorporated his gluten and dairy intolerances and access to supplemental nutrition.  *See id.* at ECF No. 56, PageID.836-37, 841-42.

The Court concludes Defendants have established that *Rapelje* has preclusive effect on the instant case.  First, that case resulted in a final judgment on the merits.  The MDOC and food service defendants filed motions for summary judgment, *id.* at ECF Nos. 152,162, which the court (Roberts, J.) granted, *id.* at ECF Nos. 184, 186.[2]  Specifically, the court found that Plaintiff's "claim failed, in part, because he did not allege the existence of a sufficiently serious medical need."  *Id.* at ECF No. 186, PageID.2574.

Second, the prior and instant lawsuits are between the same parties or their privies.  Kensu was the plaintiff in *Rapelje*, and he is the Plaintiff here.  "Thus, the party against whom claim preclusion is being asserted was present in both suits."  *Dubuc,* 312 F.3d at 751.  Additionally, in *Rapelje*, Plaintiff sued various

---

[2] Certain defendants were also dismissed for failure to prosecute, *id.* at ECF No. 179, and by stipulation of the parties, *id.* at ECF No. 188.  Nevertheless, these dismissals constitute a final decision on the merits.  *Plaut v. Spendthrift Farm*, 514 U.S. 211, 228 (1995) ("The rules of finality, both statutory and judge made, treat a dismissal . . . for failure to prosecute[] as a judgment on the merits."); *see also* Fed. R. Civ. P. 41(a)(1)(B) ("[I]f the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.")

MDOC employees in their official capacities, and in the instant case, he has again sued several (and some of the same) MDOC employees as well as the MDOC as an institution. There is privity between the MDOC defendants across cases because "[a] government official sued in his or her official capacity is considered to be in privity with the government." *Pittman v. Michigan Corrs. Org.*, 123 F. App'x 637, 640 (6th Cir. 2005) (citing *Crawford v. Chabot*, 202 F.R.D. 223, 227 (W.D. Mich. 1998); *Sunshine Anthracite Coal*, 310 U.S. at 402–03). The Court also notes that three of the defendants are significantly more closely related to the prior litigation than simply being part of the same governmental institution. Specifically, two of the defendants named in the instant lawsuit—Doctors Jeffrey Stieve and William Borgerding—were also named in *Rapelje*, and Defendant Steve Zubek in the present case succeeded Francis Szostak, a defendant in *Rapelje*, as the Food Service Director of Thumb Correctional Facility.

Third and fourth, the Court finds the issues in this action could have been raised in *Rapelje* and that the claims in both lawsuits arise from the same transaction. Specifically, the Court notes that the claims raised in the instant case overlap with allegations Plaintiff raised but did not actively prosecute in *Rapelje*. The following excerpts from each complaint are provided by way of example.

| *Kensu v. Rapelje, et al.*, 12-cv-11877-VAR | *Kensu v. MDOC, et al.*, 18-cv-10175-GAD |
|---|---|
| "Denial of access to a constitutionally adequate and proper diet, even absent his medical condition, as the Defendants within the last two years, massively modified and restricted the MDOC diet, removing many critical vitamins, nutrients and minerals, as well as virtually any and all essential fats and oils, fiber, protein, etc., the effect of which seriously endangers Plaintiff's health, well-being and quality of life, as well as violating a host of Governmental Regulations, Standards and Protocols."  ECF No. 56, PageID.795. | "The Class has been adversely affected by this diet in countless ways. Cancer, heart disease, and high blood pressure are on the rise in the MDOC since the Defendants literally removed virtually every fruit and vegetable critical to human health. These have been replaced them [*sic*] with paste, white flour, nutritionally lacking starches like potatoes and rice. Defendants also removed virtually all healthy proteins ranging from the complete removal of eggs (also a critical source of sulfur, the 4th most abundant nutrient in the human body and essential for health) and replacing them with processed meats, many of which contain almost no actual protein, even as the United State Government, United States Department of Agriculture, the American Medical Association, the National Institute for Health, the American Cancer Society and endless others, have repeatedly cautioned Americans about consuming no more than two servings of processed meat per week maximum. . . ."  ECF No. 50, PageID.1909-10 |
| "Plaintiff receives nowhere near the portions of the many food items alleged, as Defendant Food Service | "Prisoners are ordered to "short" the menu by making or serving less than the already insufficient amounts of |

10

| | |
|---|---|
| Directors such as Don Spaulding order kitchen workers to 'short' amounts of food far below the stated, or required, levels." ECF No. 56, PageID.803. | food presently offered." ECF No. 50, PageID.1944. |
| "Foods are falsely represented. For example, 'Ham and Potatoes' or 'Beef Stroganoff' will contain almost no ham or beef, and thus a minimal amount of essential protein or minerals derived from those meats, and more importantly, calculated in the daily values for prisoners." ECF No. 56, PageID.803. | "Foods are falsely represented. For example, 'Ham and Potatoes' or 'Beef Stroganoff' will contain almost no ham or beef, and thus a minimal amount of essential protein or minerals derived from those meats, and more importantly, calculated in the daily values for prisoners." ECF No. 50, PageID.1945-46. |

Both lawsuits concern the alleged denial of constitutionally adequate diet. Because Plaintiff was aware of the facts giving rise to his current action when he was litigating *Rapelje*, these claims "should have been advanced in [the] earlier suit." *Migra*, 465 U.S. at 77 n. 1.

Since privity only exists between the MDOC defendants in their official capacities, strict claim preclusion does not apply to the named defendants with respect to claims against them in their individual capacities. Plaintiff, however, has not presented sufficient evidence that actions by these parties in their non-official capacities would raise colorable Eighth Amendment, § 1983, ADA, or Rehabilitation Act claims. "The Court should not allow [Plaintiff] to continue this repetitive litigation simply by finding some . . . official that has not yet been sued,

11

and trying to blame what he claims was systemic group mistreatment of him on that one person individually." *Dubuc,* 312 F.3d at 751. Therefore, Plaintiff's claims against the individual defendants in their individual capacities are also barred. *Id*.

### B. Plaintiff Failed to Properly Exhaust

Additionally, and in the alternative, the Court finds that the action must be dismissed because Plaintiff has not satisfied the exhaustion requirement.

The Prison Litigation Reform Act ("PLRA") requires an inmate bringing an action pursuant to 42 U.S.C. § 1983, or any other federal law, to exhaust his or her administrative remedies prior to initiating the lawsuit. 42 U.S.C. § 1997e(a); *Jones v. Bock,* 549 U.S. 199, 202 (2007). The exhaustion requirement persists even if the inmate may not be able to obtain the specific type of relief he or she seeks through the administrative process. *Booth v. Churner*, 532 U.S. 731, 741 (2001). To properly exhaust, the inmate must complete the administrative review process according to the rules "defined . . . by the prison grievance process itself." *Jones*, 549 U.S. at 218-19.

MDOC's administrative procedure is described in Policy Directive 03.02.130, effective July 9, 2007. Generally, prior to submitting a written grievance, the inmate shall attempt to resolve the issue with the staff member involved within two business days of becoming aware of the issue. ECF No. 135-

8, PageID.4887. If the issue is not resolved, the inmate may file a Step I grievance within five business days. *Id.* at PageID.4887-88. The grievance should include the "[d]ates, times, places, and names of all those involved in the issue being grieved." *Id.* at PageID.4888. The grievance is screened, and if it is meritorious on its face, the Grievance Coordinator will assign the grievance to a respondent. *Id*. Generally, a response is due within 15 days from the day the grievance was filed. *Id*. During this time, the respondent must interview the inmate and conduct an investigation. *Id.* at PageID.4889. An inmate may file a Step II grievance if he or she is dissatisfied with the response received at Step I or if he or she did not receive a timely response. *Id*. The appeal form must be filed within ten business days of receiving the Step I response. *Id*. Step III grievances may be filed for similar reasons within the same timeframe. *Id.* at PageID.4890. The matter is fully exhausted after the resolution of the Step III grievance. *Id.* at PageID.4885 ("Complaints filed by prisoners regarding grievable [*sic*] issues as defined in this policy serve to exhaust a prisoner's administrative remedies only when filed as a grievance through all three steps of the grievance process in compliance with this policy.").

First, Defendants aver that the 28 grievances cited in Plaintiff's Second Amended Complaint are stale because they were filed between 2009 and 2012 and relate to events that occurred four to eight years before this case was filed. ECF

No. 135, PageID.4827. Defendants contend they are thus time-barred by Michigan's three-year statute of limitations for § 1983 claims. *Id.* (citing *McCune v. Grand Rapids*, 842 F.2d 903, 905 (6th Cir.1988)). Therefore, Defendants argue, the Court should focus on the grievances filed in the three years preceding the filing of the complaint in this case on January 16, 2018. *Id.* at PageID.4827-28. Second, Defendants state they have reviewed all 77 grievances filed by Plaintiff during that three-year period, and "not one grievance relates to the claims asserted against the defendants in this lawsuit."[3] *Id.* at PageID.4828.

Plaintiff counters that the unconstitutional conditions alleged in the 28 grievances listed in the Second Amended Complaint were never corrected, the grievances were exhausted, and the conditions raised in those grievances were similar to the present cause of action. ECF No. 143, PageID.6036. Thus, Plaintiff argues the statute of limitations reset "[e]very time Plaintiff was served a new meal in violation of his previously exhausted grievance." *Id*.

Plaintiff essentially makes a continuing violation argument. The continuing violations doctrine permits tolling of the limitations period under three conditions:

> First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern[.] ... Second, injury to the plaintiff must continue to accrue after that event. Finally, further

---

[3] The Parties dispute the admissibility of this review. Because the Court's analysis is based on the documents produced by the parties, rather than the Defendants' purported review, the Court does not address this dispute.

>injury to the plaintiffs must have been avoidable if the defendants had at any time ceased their wrongful conduct.

*Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999). The "Sixth Circuit employs the continuing violations doctrine most commonly in Title VII cases, and rarely extends it to § 1983 actions." *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003); *see also Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 257 (6th Cir. 2014) ("Courts have been 'extremely reluctant' to extend the continuing-violation doctrine beyond the context of Title VII.") (internal citations omitted).

However, "[a] plaintiff can establish a continuing violation if he or she shows a longstanding and demonstrable policy of discrimination." *Katz v. Vill. of Beverly Hills*, 677 F. App'x 232, 236 (6th Cir. 2017) (internal citations and quotation marks omitted). The plaintiff must allege it was "standing operating procedure" to "intentional[ly] discriminat[e]" against plaintiff and other members of his or her class. *Basista Holdings, LLC v. Ellsworth Twp.*, 710 F. App'x 688, 693 (6th Cir. 2017) (internal citations and quotation marks omitted). "Additionally, because a 'continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation[,]' [the plaintiff] need[s] to allege 'an act contributing to the claim occurr[ing] within the filing period[.]'" *Huang v. Presbyterian Church (U.S.A.)*, 346 F. Supp. 3d 961, 976 (E.D. Ky. 2018) (quoting *Tolbert*, 172 F.3d at 940 (internal citations omitted); *Taylor v. Donahoe*,

15

452 F. App'x 614, 619 (6th Cir. 2011)) (first, fourth, and fifth alterations in original).

Plaintiff identifies only one fully-exhausted grievance within the filing period to satisfy the requirement. Grievance RGC-15-01-0057-09d, which was fully exhausted on August 10, 2015 and raised a food related complaint or dietary substitution. ECF No. 143, PageID.6035 (citing ECF No. 135-9, PageID.4909). Plaintiff alleged in this grievance that he was supposed to receive a "Guten/Dairy/Artificial Sweetener – Free + 3 Snack Bags a Day" diet and was, at the time, supposed to be on clear liquids. ECF No. 158, PageID.6165. Instead of providing Plaintiff with healthier options, Plaintiff alleged that Aramark served him only apple juice, jello, and broth. *Id*. He further alleged that he raised concerns with the nursing staff to no avail. *Id*.

The MDOC administrative remedy process requires inmates to include the "[d]ates, times, places, and names of all those involved in the issue being grieved." ECF No. 135-8, PageID.4888. The Court finds that Plaintiff has not done so, as grievance RGC-15-01-0057-09d raises different issues from the allegations Plaintiff makes in the instant case. In particular, the Court notes that this grievance does not include any mention of reduced portions, subpar substituted ingredients, or the adequacy of Plaintiff's prescribed diet. The Court also notes that the subject of this grievance—Aramark—has already been dismissed from this lawsuit, and

16

none of the current Defendants in the case are named. Thus, Plaintiff has not complied with MDOC policy, and this grievance cannot satisfy the PLRA's exhaustion requirement, let alone support a continuing violation theory. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ."); *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009) (affirming district court's dismissal of § 1983 case where inmate did not name in his grievance each person against whom he grieved in compliance with current MDOC policy).

## IV.  CONCLUSION

Accordingly, for the reasons articulated above, the Court **GRANTS** Defendants Motion for Summary Judgment (ECF No. 135).

**IT IS SO ORDERED.**

                                                         s/Gershwin A. Drain_____
                                                         GERSHWIN A. DRAIN
                                                         UNITED STATES DISTRICT JUDGE

Dated: November 12, 2021

### CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 12, 2021, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager